[Civil No. 730.  Filed March 28, 1900.]

[60 Pac. 891.]

## W. A. HARWOOD, Defendant and Appellant, v. S. C. PERRIN, Plaintiff and Appellee.

1. OFFICE AND OFFICERS—ASSESSOR—RIGHT OF OFFICE—NOT A VESTED RIGHT—LEGISLATURE—POWER OF—ACT No. 51, LAWS OF ARIZ. 1895, AS AMENDED BY ACT No. 24, LAWS OF 1897, AND ACT No. 63, LAWS OF 1899, CONSTRUED.—Act No. 51 of the Session Laws of 1895 was amended by act No. 24 of the Session Laws of 1897 so that in counties of the first and second classes the office of assessor should be filled by election. The second act was to go into effect January. 1, 1899. At the general election held in November, 1898, appellant was elected assessor of Cochise County and entered upon the discharge of his duties January 1, 1899. On the 16th of March, 1899, the legislative assembly further amended act No. 51 of the Session Laws of 1895 by providing that in counties of the first and second classes an assessor shall be appointed by the board of supervisors for the years 1899-1900, the term of office to begin January 1, 1899, and that in 1900 and biennially thereafter an assessor should be elected. Act No. 63, Session Laws, 1899. Appellee, having been appointed under the last amendment, demanded the office from the appellant, elected under the first amendment. *Held,* that the last amendment did not impair any obligation of contract; that as the method of filling the office and duration of the term had not been regulated by Congress or constitutional

provision, the legislature had not deprived appellant of any vested right, and appellee was entitled to the office.

2. CONSTITUTIONAL LAW—SPECIAL AND LOCAL LAWS—CLASSIFICATION OF COUNTIES—ACT No. 63, 1899, LAWS OF ARIZONA, NOT IN CONFLICT WITH "HARRISON ACT," 1 SUPP. REV. STATS. U. S., P. 503.—Act No. 63, 1899, applying to counties of first and second class, the classification being based upon the equalized assessed valuation of the property, is not local or special so as to be in conflict with the provisions of the "Harrison Act," 1 Supp. Rev. Stats. U. S., p. 503; Organic Law of Arizona, Rev. Stats. Ariz., 1901, par. 63.

APPEAL from a judgment of the District Court of the First Judicial District in and for the County of Cochise. George R. Davis, Judge. Affirmed.

The facts are stated in the opinion.

Charles Bowman, and William M. Lovell, for Appellant.

The following cases are cited as establishing that the classification attempted is local and special: *Bravin* v. *Mayor etc. of Tombstone,* 4 Ariz. 83, 33 Pac. 589; *Wheeler* v. *Philadelphia,* 77 Pa. St. 338; *Ewing* v. *Habletzelle,* 85 Mo. 75; *State* v. *Toole,* 71 Mo. 650; *State* v. *Wofford,* 121 Mo. 61, 25 S. W. 853; *Devine* v. *Commissioners Cook County,* 84 Ill. 590; *Kerrigan* v. *Force,* 68 N. Y. 381; *Desmond* v. *Dun,* 55 Cal. 242; *Conteric* v. *New Brunswick,* 44 N. J. L. 358; *State* v. *Gaddis,* 44 N. J. L. 363; *State* v. *Jersey City,* 45 N. J. L. 297; *Passaic County Freeholders* v. *Stevenson,* 46 N. J. L. 173; *City of Topeka* v. *Gillett,* 32 Kan. 431, 4 Pac. 800; *Miller* v. *Kister,* 68 Cal. 142, 8 Pac. 813; *State* v. *Justice Court,* 89 Mo. 237, 1 S. W. 307.

Barnes & Martin, for Appellee.

STREET, C. J.—The office of assessor, by the Revised Statutes of 1887, was filled by election, unless the board of supervisors of the various counties should by ordinance unite and consolidate that office with the office of sheriff. By the Revised Statutes of 1887 the counties were classified into first, second, and third class counties, based upon the number of registered voters. In section 1 of act No. 47 of the Session Laws of 1889 the legislature, by statute, made the sheriff of each county of the second and third classes *ex officio* assessor. The sheriff

being then an elective officer, the office of assessor was *ipso facto* elective in such counties. Act No. 51 of the Session Laws of 1895 classified counties into first, second, third, fourth, fifth, and sixth classes, based upon the equalized assessed valuation of property. Section 4 of said act made the office of assessor appointive by the boards of supervisors in first and second class counties, and fixed the term of office at one year; and in third, fourth, fifth, and sixth class counties, made the sheriff *ex officio* assessor. Act No. 51 of the Session Laws of 1895 was amended by act No. 24 of the Session Laws of 1897 so that in counties of the first and second classes the office of assessor should be filled by election at the same time and in the same manner as other county offices. But section 4 of said act No. 24 provides, "This act shall take effect and be in force from and after January 1, 1899." On the fifth day of January, 1898, W. A. Harwood, the appellant, was appointed by the board of supervisors of Cochise County as assessor of that county for the term of one year. At the general election in November, 1898, Harwood was a candidate for the office of assessor for Cochise County, and received the highest number of votes cast for said office, and received a certificate of election, and qualified as such assessor and entered upon the duties of the office on the first day of January, 1899. While Harwood was in office,—to wit, on the sixteenth day of March, 1899,—the legislative assembly made a further amendment to said act No. 51, and provided: "That in counties of the first and second class an assessor shall be appointed by the board of supervisors for the years 1899 and 1900, whose term of office shall be, in all first and second class counties, for the term of two years from the first day of January, 1899. That in the year 1900, and biennially thereafter, in counties of the first and second class, an assessor shall be elected at the same time and in the same manner as other county officers, whose term of office shall be, after the year 1900, two years, or until his successor shall have been elected and qualified." After the passage of that law (act No. 63 of the Session Laws of 1899),—to wit, on April 3, 1899,—the board of supervisors of Cochise County appointed the appellee, S. C. Perrin, as assessor for said county, under the provisions and by virtue of said act No. 63. After such appointment appellee, Perrin, filed his bond, took the oath of office, and made demand upon

Harwood for the office, and Harwood refused to deliver the same. Appellee, Perrin, then brought action in the district court of Cochise County to obtain possession of the office and to oust appellant therefrom, and upon the trial of the case obtained a judgment in his favor, from which judgment appellant, Harwood, appeals.

Appellant contends that although act No. 24 of the legislative assembly of 1897 provides that the act should not take effect until January 1, 1899, yet, so far as the election was concerned, it took effect immediately after its passage, and that his election at the general election of 1898 was a good and valid election, and that having been duly elected to the office, and having entered upon the discharge of its duties, he was the legally constituted assessor, and the legislature could not legislate him out of office by changing the manner of filling the office during his term; that act No. 63 of the legislative assembly of 1899 was local and special, and in violation of the inhibition contained in the act of Congress of July 30, 1886, commonly known as the "Harrison Act."

As to the first point, that it was beyond the power of the legislature to legislate him out of office, we regard it as the settled law that unless the method of filling the office, and the duration of the term, was one of constitutional provision, or unless regulated by act of Congress, the legislature would have full control of the method of appointment and the duration of the term. Arizona as yet having no constitution, but operating under powers delegated to it by Congress, the Organic Act and the congressional enactments supply for its legislature the limitation of power. Unless the act of the legislature was such as impaired the obligation of contracts, there is no constitutional or congressional provision controlling the matter. In the case of *Prince* v. *Skillin*, 71 Me. 361, reported in 36 Am. Rep. 325, there is a clear enunciation of this principle: "All offices, except when legislative authority is limited or restricted by constitutional provisions, are subject to the will of the legislature. There is, with the above exception, no vested right in an office or its salary. The office may be abolished. The mode of appointment may be changed. The length of time of official existence may be shortened. The compensation for official services may be diminished," and here cites *Farwell* v. *Rockland*, 62 Me. 298; *Butler* v. *Penn-*

*sylvania,* 10 How. 403, 13 L. Ed. 472; *Barker* v. *City of Pitts-burg,* 4 Pa. St. 51; *Conner* v. *City of New York,* 5 N. Y. 291; *Taft* v. *Adams,* 3 Gray, 126. The case of *Butler* v. *Pennsyl-vania,* 10 How. 403, 13 L. Ed. 472, is quite instructive in this connection. By authority of statute, the plaintiffs in error in that case were by the governor of the state appointed to the place of canal commissioners. The same statute directed that the appointment be made annually on the first day of each February, and the compensation of the commissioners was fixed at four dollars per diem each. Plaintiffs accepted the appointment and took office on the 1st of February, 1843. By a subsequent statute, on the 18th of April, 1843, the office of canal commissioner was made elective, and the appointing power taken from the governor; also, the per diem allowed each commissioner was reduced. The act took effect from and after its passage. The difference between that case and the one at bar is, that in the one instance the legislature changed the office from appointive to elective, and in the other from elective to appointive. It was held in that case that there was no contract between the state and the officers, and that the act of the legislature changing the method of filling the office, repealing the former act, and removing the officers appointed, and changing the rate of compensation, was not such an act as impaired the obligation of contracts. A learned judge has said that retroactive laws of every de-scription neither accord with sound legislation nor the funda-mental principles of the social compact. If it was the design of the legislative assembly of Arizona, by its act No. 63, to deliberately legislate men out of office, such action would be highly censurable, yet an exercise of power beyond the con-trol of courts. Another learned judge has said that he "would be unwilling to consider any legislative act so intended, unless that intention was made manifest by express words, because it would be a violation of fundamental principles, which is not to be presumed." We have no idea that our own legisla-ture intended to deliberately take away from an officer who had been elected by the people the emoluments of the office by legislating him out of office. When we consider that act No. 24 of the Session Laws of 1897 provided that it should not take effect until January 1, 1899, and that there was a great deal of doubt in the minds of many, and great confusion

among the various boards of supervisors, as to whether the
assessor for the term commencing January 1, 1899, was elec-
tive or appointive, and boards of supervisors of the various
counties made appointments irrespective of the election; when
we consider this condition of the law, and the history sur-
rounding the assessor's offices during that period,—the action
of the legislature is easily explainable, in a conscientious ef-
fort to bring about certainty in regard to that office, and to
place the legality of assessments made by the assessors of
1899 beyond any question of doubt.

As to the contention that act No. 63 was local and special,
and comes within the inhibitions of the act of Congress, the
decision of this court in the case of *Bravin* v. *Mayor etc.,* 4
Ariz. 83, 33 Pac. 589, seems to us to cover the question. The
city of Tombstone was created by act of the general assembly
of 1881. The act provided for a city assessor who should be
*ex officio* tax and license collector, health officer, and street
commissioner. Bravin was duly elected to the office, and was
in the discharge of the various duties incident to it, when the
legislature, in 1891, provided that in all cities in which
the total vote cast at the general election held therein on the
fourth day of November, 1890, was less than six hundred the
functions of the city assessor, city tax-collector, city license-
tax-collector, and street commissioner should be incident, *ex
officio,* to the office of chief of police; thus legislating Bravin
out of office. This court then held that if the act of 1891 was
held valid it would operate as an amendment to the charter
of the city of Tombstone; that the act of the legislature did
not reach a class, but it reached only an individual city,—
the only one in the territory to be reached by the act,—and
was therefore local and special. The court further said that
the classification of cities may be made, based upon popula-
tion, upon the number of votes cast from time to time, upon
the extent or character of particular business or industry done
or pursued within its limits, etc., and this even though but
one city in the territory comes within the provision of the
statute at the time of the enactment. But the statute must
be elastic, so that other cities might attain the requisite con-
ditions, and come within the classification and operation of
the statute. Legislation affecting such class is not local and
special legislation. Act No. 63 related to classes, and specified

first and second class counties. In doing so, it reached counties other than Cochise, although the county of Cochise may have been the only county of the second class. The judgment of the district court is affirmed.

Sloan, J., and Doan, J., concur.