[Civil No. 1296.   Filed March 6, 1913.]

[130 Pac. 757.]

## JOHN D. PATTY, Appellant, v. COUNTY OF GREENLEE, Appellee.

1. COUNTIES—OFFICERS—SALARIES—POWER TO FIX.—Constitution, article 12, section 4, empowering the board of supervisors to fix salaries for all county officers for whom no compensation is provided by law, to remain in effect until changed by general law, did not authorize the board of supervisors to fix the compensation of officers, such as the sheriff, whose salary was fixed under the territorial laws; constitution, article 22, section 2, and Civil Code of 1901, paragraphs 2600, 2602, providing compensation by way of salary for sheriff, so that they were not officers "for whom no compensation was provided by law," within the meaning of the constitution.

2. OFFICERS—SALARIES—CHANGE.—Any power given to county boards of supervisors by constitution, article 12, section 4, authorizing them to fix all salaries of county officers for whom no compensation is provided by law, which salaries shall remain in force until changed by general law, was only intended to be exercised temporarily during the time between admission to statehood and the enactment of

legislation "by general law"; article 4, section 17, prohibiting the change of compensation of public officers during their term of office, not applying to compensation fixed by the board of supervisors.

APPEAL from a judgment of the Superior Court of the County of Greenlee. F. B. Laine, Judge. Affirmed.

The facts are stated in the opinion.

Mr. L. Kearney, for Appellant.

Mr. E. V. Horton, for Appellee.

ROSS, J.—The appellant is the sheriff of Greenlee county, having been elected thereto at the December 12, 1911, election, under the provisions of the enabling act and the laws of the territory of Arizona. Arizona was admitted into the Union as a state February 14, 1912, on which date appellant was inducted into the office of sheriff. Sheriffs, under the laws of the territory of Arizona, had been compensated for their services by fees and salary. However, the salaries were nominal, and in first, second, and third class counties were allowed by the board of supervisors, and were not to exceed $600. Ariz. Rev. Stats. 1901, par. 2600. In fourth, fifth, and sixth class counties they were allowed, in addition to fees, a salary not less than $300, nor more than $600, per annum, payable quarterly. Id., par. 2602.

The constitution which became effective February 14, 1912, by section 17, article 22, abolished the fee system, and provided that all state and county officers and all justices of the peace and constables, whose precinct includes a city or town or part thereof, should be paid fixed and definite salaries.

Section 4, article 12, of the constitution, provides that "the duties, powers and qualifications of such officers [county officers] shall be as prescribed by law. The board of supervisors of each county is hereby empowered to fix salaries for all county and precinct officers within such county for whom no compensation is provided by law, and the salaries so fixed shall remain in full force and effect until changed by general law."

On February 16, 1912, the board of supervisors of Greenlee county, presuming to act under the provisions of section 4,

article 12, *supra,* by their order fixed the salary of the sheriff of that county at $4,500 per annum, payable in equal monthly installments.

The first legislature of Arizona (Sess. Laws, c. 93, p. 591, effective May 31, 1912) classified the counties of the state, and regulated and fixed the compensation of all county and precinct officers. According to this act Greenlee county belongs to the fifth class, and the salary of the sheriff is fixed at $3,600 per annum. Id., secs. 1, 2, 7.

It is the contention of appellant that he should be paid the salary of $4,500, as fixed by the board of supervisors, and not the salary as fixed by the legislature. He accordingly instituted his suit against the county for his salary for the month of September, 1912, alleging an indebtedness of $375. Judgment went against him in the trial court, from which he appeals.

The appellant, to sustain his position, argues that the constitution delegated the power by section 4, article 12, *supra,* to the board of supervisors to fix the salaries of county and precinct officers "for whom no compensation is provided by law," and, the board having acted and fixed the salary of appellant, the act of the legislature was ineffective to change such salaries, because of the inhibition contained in section 17 of article 4 of the constitution. That section is as follows: "The legislature shall never grant any extra compensation to any public officer, agent, servant, or contractor, after the services shall have been rendered or the contract entered into, nor shall the compensation of any public officer be increased or diminished during his term of office."

The compensation of many of the county officers under the territorial laws was a fixed and definite salary. Such was the case as to the county recorder, assessor, superintendent of schools, and members of the board of supervisors and district attorney. The sheriff's compensation consisted of fees and salary.

It can hardly be contended that section 4 of article 12 of the constitution empowered the boards of supervisors to fix the compensation of those officers whose salary was fixed under the territorial laws. Under that section they were empowered to fix the salaries of officers *"for whom no compensation is provided by law."* It was probably the intention of

the framers of the constitution that those officers who, under the territorial laws, were compensated by salaries should continue, under statehood, to be paid the same salaries; and, under a line of decisions of which *Gross* v. *Kenfield,* 57 Cal. 626, is the first to announce the rule, it is doubtful if the legislature, because of the constitutional inhibition against the enlargement or diminution of the compensation of public officers during their term, could pass any law affecting the salary of such officers. The power of the board of supervisors being limited by section 4, article 12, to fixing salaries where "no compensation is provided by law," the question is: Did they have the power to fix the salary of appellant, as was attempted by their order of February 16, 1912? The territorial laws compensated sheriffs both by salary and fees. Rev. Stats. 1901, pars. 2600, 2602. The constitution (sec. 17, art. 22) took from them the fees; but by section 2, left in force the territorial law providing compensation by way of salary. Sheriffs were not, therefore, officers "for whom no compensation was provided by law." Treasurers of counties, under territorial law, were paid salaries and fees; but, unlike the sheriff, their principal compensation was the salary. If the board of supervisors had the power to fix, increase, or decrease the salary of the sheriff, they could take the same action on the salary of the treasurer. The adequacy or inadequacy of the compensation is no element of the board's power or lack of power to act. They are limited and confined by the very terms of the constitution to the fixing of salaries "for whom no compensation is provided by law."

But granting that the boards of supervisors were given the power, by section 4, article 12, to fix the salaries of sheriffs, we think it was to be exercised temporarily, and only during the interim between the dates of admission to statehood and proper legislation "by general law."

The power of fixing, increasing and decreasing the salaries of all officers of the state is made a legislative function by the constitution, and its power in that respect is not limited or qualified, except that the compensation shall not "be increased or decreased during his term of office." One, and only one, time is the power granted boards of supervisors to fix the salaries of certain designated officers, "and the salaries so fixed shall remain in full force and effect until changed by

general law." That is, the board, once having fixed a salary, could not thereafter itself change it; but it must remain in full force and effect until changed by general law.

The prohibition against the increasing or decreasing of the compensation of public officers has reference to "compensation" that is "fixed" by the constitution or by legislative act, and not to compensation fixed by an order of the board of supervisors, for that compensation is only temporary and "until changed by general law."

The constitution, in other places, has empowered functionaries to fix temporarily the salaries of subordinate officials, as in the case of the reporter of decisions (section 14, article 6), the clerk of the supreme court (section 17, article 6), and the clerk of the superior court (section 18, article 6), "until such salaries shall be determined (or fixed) by law." We think that in each one of these provisions, authorizing the supreme court and the boards of supervisors to fix salaries, there is contained an express reservation of power in the legislature to regulate and fix the compensation of county and precinct · officers; and that chapter 93, Session Laws of 1912, as it affects the salary of appellant, is valid legislation. The salary of appellant, if ever properly fixed by the board of supervisors, was made at the first session of the legislature, "by general law," "fixed and definite." It is a provision of the constitution that the legislature shall fix, "by general law," the salaries of county and precinct officers; and it was not contemplated that that general scheme devised for uniformity, stability and regularity should be suspended or postponed or nullified for any length of time, except the interim between admission to statehood and action by the legislature.

Most of the states of the Union have provisions in their constitutions similar to ours, prohibiting the increasing or decreasing of the salary of a public officer during his term, and the courts have many times construed the provisions under varying facts and conditions; but no case has been cited by counsel, nor have we been able to find any case, wherein the question before us has been decided. The language of the constitutions of Pennsylvania and West Virginia differs so slightly from our constitution in the particulars involved in this case that we think their decisions thereon very persuasive. In *County of Crawford* v. *Nash,* 99 Pa. 253, 260,

the court said: "In *Rucker* v. *Supervisors*, 7 W. Va. 661, which arose under section 9 of article 3 of the constitution of West Virginia, which provides, that the compensation of public officers shall not be increased or diminished during their term of office, it was held, that this language in the constitution applies only to such salaries or compensation of public officers as have been definitely fixed or prescribed by law, either by the constitution of the state, or by some statute, made in pursuance thereof. If the ordinances of a city are not laws, within the meaning of this clause in the constitution, much less so are the orders or agreements of the county commissioners and county auditors in regard to the treasurer's salary. The obvious meaning of the constitution is, that the General Assembly should regulate (that is, ascertain and establish) the compensation which should be paid to the respective county treasurers, and that thereafter 'no law' (that is, no act of assembly) should increase or diminish their respective salaries during the term for which they were elected."

We think the "orders and agreements" of the board of supervisors were intended by the constitution to fill in the hiatus pending legislation; and that the salary fixed "by general law" is the salary to which appellant is entitled.

Judgment of the trial court is affirmed.

FRANKLIN, C. J., and CUNNINGHAM, J., concur.