[Civil No. 1647.  Filed December 31, 1918.]

[177 Pac. 261.]

THE BOARD OF SUPERVISORS OF YAVAPAI COUNTY, ARIZONA, and WILLIAM STEPHENS, J. A. JAEGER and C. C. STUKEY, Members of said Board, and R. T. BELCHER, Clerk of said Board, Appellants, v. WILLIAM STEPHENS and W. G. WINGFIELD, Appellees.

1. OFFICERS—SALARIES—"FIXED"—"DEFINITE."—In Constitution, article 22, section 17, providing that all state and county officers, justices of the peace, and constables shall be paid fixed and definite salaries, the words "fixed" and "definite" are not synonymous, but "fixed" means established or settled, to remain for a time, and "definite" means one defined or determined in amount.

2. OFFICERS—SALARIES.—In view of Constitution, article 22, section 17, requiring state and county officers to be paid fixed and definite salaries, the intention is to enforce a uniform system of compensating public officers by paying them for fixed and definite periods of service, during which the salaries shall be definite in amount.

3. OFFICERS—COMPENSATION—STATE AND TERRITORIAL ACTS—CHANGE. Provisions for salaries of certain county officers under territorial laws, being continued under Constitution, article 12, section 3, subject to change by law, and, under article 22, section 2, continued in force until expiring by their own limitation, or altered or repealed, were not enacted pursuant to the Constitution, nor subject to restrictions therein, prohibiting their alteration, and could be repealed or altered by the legislature.

4. STATUTES—TERRITORIAL STATUTES—REPEAL.—Territorial laws, which were subject to repeal by the territorial legislature when continued under the state Constitution, continued to be repealable by the state legislature.

5. OFFICERS—SALARIES—TERRITORIAL LAWS—RIGHT TO ALTER DURING TERM.—Notwithstanding Constitution, article 4, section 17, prohibiting change of salary of officer during his term, and article 22, section

17, requiring state and county officers to be paid fixed and definite salaries, the provisions of Laws of 1917, chapter 61, adjusting and increasing salaries of certain county officers, became effective during the terms of the incumbents current at the time of the enactment of such statute, since under Constitution, article 12, section 4, and article 22, section 2, the territorial compensation was continued only until changed by law.

6. STATES—ADMISSION OF TERRITORY — EXISTING LAWS — "CHANGE"— "ALTER."—The words "change," as used in Constitution, article 12, section 4, and "alter," as used in article 22, section 2, as to the amendment of territorial laws, continued in force temporarily under the state Constitution, may be used interchangeably.

APPEAL from a judgment of the Superior Court of the county of Yavapai. Frank H. Lyman, Judge. Reversed and dismissed.

Mr. Wiley E. Jones, Attorney General, and Mr. F. L. Haworth, County Attorney, Mr. Perry M. Ling, Deputy County Attorney, Mr. Ward H. Wheeler, Messrs. Mitchell & Linney, and Mr. Neil C. Clark, for Appellants.

Messrs. Norris, Spalding & Norris, Mr. A. H. Favour and Mr. John F. Ross, for Appellees.

CUNNINGHAM, C. J.—The appellees commenced this action to prevent the board of supervisors from paying the county recorder, county treasurer, county attorney, county assessor and county superintendent of schools, officers of said county, their salaries as provided by chapter 61, laws of 1917. The plaintiffs contend that said officers' salaries were provided by chapter 2, title 26, Revised Statutes of Arizona of 1901, and laws amending same, at the beginning of said officers' terms of office, viz., on the first Monday of January, 1917, and that the legislature is prohibited, by section 17 of article 4, state Constitution, from enacting any law that will have the effect of increasing or diminishing said officers' salaries during their term of office. The defendants demurred to the complaint, and their demurrer was overruled, and judgment was rendered, restraining the said board from paying the said officers' salaries other than as provided by the territorial laws as they were continued in force by the Constitution as laws of the state. Section 17, article 22, Constitution, is as follows:

"All state and county officers (except notaries public) and all justices of the peace and constables, whose precinct includes a city or town or part thereof, shall be paid fixed and definite salaries, and they shall receive no fees for their own use."

This provision is a clear declaration of the policy of the Constitution to follow a system of paying official compensation by fixed and definite salaries alone. The words "fixed" and "definite," as used in said section 17, cannot be understood as having been used to convey the same meaning, because if so understood one or the other would become useless. The word "fixed" is defined by Webster: "Securely placed or fastened; settled; established; firm; immovable; unalterable." Hence, a "fixed" salary is one that is entirely placed or fastened with regard to its duration; is one that is settled to remain for a time.

The word "definite" is defined by the same authority as "a thing defined or determined; a definite thing." Hence, with such meaning, a definite salary is one defined or determined, a definite thing, and has reference, as used in said section 17, to the exact amount of the salary. Consequently the officers shall be paid salaries fixed, settled, firm for a period of time, and such salaries shall be exactly defined in amount during such period of time.

The intention of the framers of the Constitution, and of the people in adopting that instrument was therefore to enforce under statehood a uniform system of compensating all public officers by paying them salaries for fixed, settled periods of service, and during such periods of service the salaries payable to be definite in amounts.

As preliminary to providing the system of uniform salaries to govern from the date of statehood until the state legislature could act in the premises, in other words, to provide a temporary uniform system of definite salaries for the officers, effective until the legislature could provide fixed and definite salaries, the Constitution prescribed definite salaries for certain named state officers until otherwise provided by law. See section 13, article 5, state Constitution. Subordinate state offices were created by the Constitution without definite salaries being provided for the officers. For illustration, see sections 14 and 17, article 6. In such instances the officers are given such "compensation by salaries only as may be

provided by law; and the supreme court shall have power to fix said salary until such' salary shall be determined by law.'' The office of the clerk of the superior court is created by section 18, article 6, with ''such compensation, by salary only, as shall be provided by law. Until such salary shall be fixed by law the board of supervisors shall fix such salary.''

'' . . . The board of supervisors of each county is hereby empowered to fix salaries for all county and precinct officers within such county for whom no compensation is provided by law, and the salaries so fixed shall remain in full force and effect until changed by general law.'' Section 4, art. 12, Constitution.

Certain territorial county offices were continued as offices under the state government. Under the territorial laws, certain of county officers holding such county offices were compensated by fees. After statehood no county officer could be compensated by fees. Section 17, art. 22, Constitution. We consequently held that officers holding offices, who had before statehood received fees as compensation, after statehood they became officers for whom no compensation is provided by law within section 4 of article 12, *supra,* and the board of supervisors were empowered to fix their salaries temporarily, until changed by general law.

The county offices of recorder, treasurer, attorney, assessor and superintendent of schools, as they existed under the territorial laws, were continued under the Constitution, subject to change by law. Section 3, art. 12, Constitution. Chapter 2, title 26, Revised Statutes of Arizona of 1901, and amendments thereto, prescribed means by which the amounts of said officers' salaries were capable of determination. The existence of prescribed conditions within a county determined the amounts of the salaries of the said county officers. The conditions, viz., equalized, assessed, valuation of property of the county, determined the class of the county, and the class determined the amount of the officers' salaries. . These laws were not repugnant to the Constitution, but they were in harmony with the policy declaring for a system of compensating officers by fixed and definite salaries. Such laws were therefore continued in force as laws of the state ''until they expire by their own limitations or are altered or repealed by law.'' Section 2, article 22, state Constitution.

The said territorial laws, so permitted to remain in force temporarily, "until they should expire by their own limitation or are altered or repealed by law," were not enacted pursuant to the Constitution, nor were they subject to the restrictions contained in the Constitution prohibiting their alteration or repeal. Such territorial laws, when enacted, were subject to general legislative alteration, amendment, and repeal at the discretion of the territorial legislature, without regard to the effect such legislation might have on the salaries of county officers. See *Harwood* v. *Wentworth,* 4 Ariz. 378, 42 Pac. 1025; *Dysart* v. *Graham County,* 5 Ariz. 123, 48 Pac. 213; *Williamson* v. *Gila County,* 5 Ariz. 237, 52 Pac. 363; *Harwood* v. *Perrin,* 7 Ariz. 114, 60 Pac. 891.

Such laws of the territory as were continued in force as laws of the state were continued as an entirety with their advantages as well as with their disadvantages. The statutes in question here were inherently subject to be altered at any time the legislature saw fit to alter them by general law, and such infirmity in these statutes remained in force as the law of the state after statehood as it was in force prior to statehood, and the Constitution expressly reserved to the legislature of the state the power to alter or repeal all laws of the territory continued in force as laws of the state without limitation on that power.

In the foregoing manner, a temporary system of compensating all state, county and precinct officers was provided by the Constitution. We said, in *Patty* v. *Greenlee County,* 14 Ariz. 422, 130 Pac. 757, with reference to the constitutional salary system, as follows:

"It [section 4, article 12, Constitution] is a provision of the Constitution that the Legislature shall fix, 'by general law,' the salaries of county and precinct officers; and it was not contemplated that that general scheme devised for uniformity, stability and regularity should be suspended or postponed or nullified for any length of time, except the interim between admission to statehood and action by the Legislature."

We held in that case that a general law immediately superseded the orders or resolutions of the board of supervisors fixing the salary of a county officer for whom no compensation was provided by law. I adhere to the principles recognized in that decision as sound. I am of the opinion that the territorial laws fixing the salaries of county officers, which re-

mained in force as the laws of the state, were no more sacred from alteration than were the orders of the board of supervisors fixing the salaries of officers for whom no compensation was provided by law. They stand upon an equal footing in every respect. Both means of fixing salaries were temporary, "and it was not contemplated that the general scheme devised for uniformity, stability and regularity should be suspended or postponed or nullified for any length of time, except the interim between admission to statehood and action by the legislature." Section 17, article 4, Constitution, provides that:

"The Legislature shall never grant any extra compensation to any public officer, agent, servant, or contractor, after the services shall have been rendered or the contract entered into, nor shall the compensation of any public officer be increased or diminished during his term of office."

The last clause of said section 17 is asserted as prohibiting any increase or decrease of the said officers' salaries during their terms of office. Immediately the inquiry is suggested whether section 17 was intended to prohibit legislation which would change the salary system temporarily provided by the Constitution by which all state, county, and precinct officers were commanded by section 17, article 22, to be paid fixed and definite salaries, to have effect in the interim between admission to statehood and action by the legislature. In the Patty case, *supra,* we clearly held that section 17, article 4, is inapplicable to the temporary system of salaries in the particular of officers for whom no compensation was provided by law and the temporary salaries fixed by the board of supervisors. In support of the position, we said further in the Patty case:

"Most of the states of the Union have provisions in their Constitutions similar to ours, prohibiting the increasing or decreasing of the salary of a public officer during his term, and the courts have many times construed the provisions under varying facts and conditions. . . . The language of the Constitutions of Pennsylvania and West Virginia differ so slightly from our Constitution in the particulars involved in this case that we think their decisions thereon very persuasive. In *County of Crawford* v. *Nash,* 99 Pa. 253, 260, the court said: 'In *Rucker* v. *Supervisors,* 7 W. Va. 661, which arose under section 9 of article 3 of the Constitution of West Virginia,

which provides that the compensation of public officers shall not be increased or diminished during their term of office, it was held that this language in the Constitution applies only to such salaries or compensation of public officers as have been definitely fixed or prescribed by law, either by the Constitution of the state, or by some statute, made in pursuance thereof. . . . The obvious meaning of the Constitution is that the General Assembly should regulate (that is, ascertain and establish) the compensation which should be paid to the respective county treasurers, and that thereafter ''no law'' (that is, no act of assembly) should increase or diminish their respective salaries during the term for which they were elected.' ''

I understand from these authorities that such constitutional restrictive clauses, effective for the first time, are not self-executing, unless from their context they are plainly self-executing. Section 100(4), 12 Corpus Juris, 727, lays down the following doctrine:

''Constitutional provisions are sometimes so framed as to be inoperative until laws are passed putting them into effect, and in this case, it is a general rule that existing statutes in conflict with the principles of such provisions remain in force until the necessary legislation is had. A provision may be so framed, however, that, while legislation is necessary to put into effect its affirmative principles, it repeals existing statutes inconsistent with it.''

This court, having approved the rule followed in West Virginia and in Pennsylvania, thereby clearly held that section 17, article 4, Arizona Constitution, is so framed as not to be self-executing with regard to the orders of the board of supervisors temporarily fixing the salaries of county officers for whom no compensation is provided by law, as in the Patty case. In *Yuma County* v. *Sturges*, 15 Ariz. 538, 140 Pac. 504. we expressly held that the statutes of the territory, fixing the compensation of the county treasurer in force at the date of admission to statehood, as affected by section 17 of article 4, as follows: ''When the salaries or compensation of public officers have been definitely fixed or prescribed by law, either by the Constitution of the state or by some statute made in pursuance thereof, the salary or compensation so prescribed may not be increased or diminished during the term of the

officer"—thereby again recognizing the above general rule of West Virginia, Pennsylvania and Corpus Juris.

The statutes of the territory, prescribing the salaries of certain county officers in force at the date of admission to statehood and remaining in force as laws of the state because they were in harmony with the Constitution, were in no fair sense "statutes made in pursuance" of the Constitution. The orders of the board of supervisors, prescribing salaries for county officers for whom no compensation was provided by law, were necessarily made by constitutional authority expressly delegated to the board. It would require some forced reasoning to consider such orders as orders not made in pursuance to the Constitution. The territorial statutes were adopted by the Constitution, and the orders were the result of constitutional command. The first became laws of the state in a passive manner, while the others became laws of the state by positive action. The first became laws, as they were in force and are expressly declared to remain such laws of the state until altered or repealed by law; that is, the enactment of laws by the legislative power of the state in pursuance to the Constitution—general laws, and not local or special laws. The orders became laws after the Constitution was operative, and they are declared laws "in full force and effect until changed by general law." Section 4, art. 12, *supra.* We have necessarily construed the expression, "until changed by general law" as applied to the orders of boards of supervisors, as meaning exactly what the words import that a general law, prescribing fixed and definite salaries for county officers whose salaries were fixed by the boards of supervisors in the interim between statehood until legislative action, immediately superseded such orders without the interference of section 17, article 4, Constitution.

Whether the general laws enacted after statehood and in pursuance to the Constitution, altering the territorial laws prescribing county officers' salaries, immediately supersede such territorial laws, depends upon whether the use of the expression "until they expire of their own limitation or are altered or repealed by law," as used in section 2, article 22, Constitution, is more sacredly guarded than the expression "until changed by general law," as used in section 4, article 12, Constitution, and as construed by this court in the Patty

and Sturges cases, *supra.*   Section 2, article 21, Constitution, state of Idaho, contains the following language:

"All laws . . . not repugnant to the Constitution shall remain in force until they expire by their own limitation or be altered or repealed by the Legislature."

The supreme court of that state, in *Butler* v. *City of Lewiston,* 11 Idaho, 398, 83 Pac. 235, defining the words, "limitation," "altered," and "repealed," said:

"The words 'limitation,' 'altered,' and 'repealed,' I think, apply to all laws, special as well as general, in force at the date of the adoption of the Constitution and not repugnant to any of its provisions. . . . What is the meaning of the word 'altered' as used in that section? It certainly means to make different without destroying identity, to vary without entire change."

The words "change" and "alter" may be used, the one for the other, and convey the same meaning in most instances —certainly they may be used interchangeably in section 4, article 12, and in section 2, article 22.   No refinement of reasoning will justify a conclusion that the laws of the territory continued in force as laws of the state until altered or repealed, were intended to remain laws of longer duration after they were altered or repealed, neither would the orders or resolutions of the boards of supervisors remain in force after they were "changed" by general law.   The power to alter, in the one instance, and the power to change, in the other, were left exclusively to the discretion of the legislative power of the state, and, when exercised, the time when the alterations or the changes made should become effective was made to depend upon other provisions of the Constitution specially applicable to the matters of putting general laws enacted by the legislative power pursuant to the Constitution into effect.

The parties seem to agree that chapter 61, Laws of 1917, altering the county classification statutes of the territory, became operative on the fourteenth day of March, 1917. Assuming for all purposes of this case, but not deciding, that on such date said chapter became operative for any purpose, it clearly became operative for all purposes, including the alteration of said classification statutes; and thereafter the only law in Arizona providing the salaries of county recorder, county treasurer, county attorney, county assessor and county superintendent of schools, of Yavapai county, as well as the

salaries of all county officers of the counties of the state, was provided by chapter 61, Laws of 1917, in so far as said chapter purports to provide salaries for the officers named therein and reasonably included within its terms.

Chapter 61, Laws of 1917, was apparently brought about by reason of the decision of this court in *Hunt* v. *Mohave County,* 18 Ariz. 480, 162 Pac. 600, filed February 3, 1917, whereby a special statute of the state, providing the salaries of the officers of each separate county of the state, was declared void as violative of the Constitution, prohibiting local or special laws altering general laws. In that case Judge ROSS, speaking for the court, said:

"By reason of these differences in size, population, and wealth of the different counties of the state the labors, burdens, and duties of their officers greatly differ, and therefore, in order to fix their compensation, in proportion to their responsibilities and duties, some kind of a classification must be adopted."

I may add that every moderately informed person knew that the wealth of the counties of this state had increased to a point where they all, or nearly all, had become counties of the first class, as classified by the Laws of 1901. That a real necessity existed in justice to the county officers to change the classification of first-class counties so that officers of counties of greater wealth should receive just salaries, as suggested by Judge ROSS, *supra,* was perfectly apparent. Chapter 61, making the suggested changes, was passed by the legislature 39 days after the opinion in the Mohave county case was filed in this court.

For the reasons stated, I am of the opinion that chapter 61, Laws of 1917, did not stand suspended by section 17, article 4, during the said officers' terms of office; that the appellants correctly paid county officers salaries in amounts fixed by said chapter 61, Laws 1917, and, as a consequence, the trial court erred in overruling appellant's demurrer.

The judgment should be reversed, and the cause remanded, with instructions to sustain the demurrer and dismiss the action.

JOHN WILSON ROSS, J., concurs.

ROSS, J. (Dissenting).—The question involved is whether the court's action in overruling the demurrer to com-

plaint and entering judgment for plaintiffs-appellees, was correct. The object of the suit was to enjoin the defendants from paying certain county officers of Yavapai county, elected for the term 1917–18, salaries under the Classification and Salary Act of March 14, 1917, being chapter 61, Laws of 1917, for the reason that said act was enacted subsequent to the beginning of the term of said officers and increased their salaries during their term of office. Their predecessors had been paid salaries under the Salary Act of 1912 (Civil Code of 1913, pars. 3226–3241) and they believed when they were elected that they would receive the same salaries as their predecessors, and were, in fact, paid those salaries for the month of January, 1917. However, on February 3, 1917, in *Hunt* v. *Mohave County,* 18 Ariz. 480, 162 Pac. 600, this court held the Salary Act of 1912 unconstitutional. Until other valid legislation fixing the salaries could be had, county officers corresponding to those who had been paid salaries before statehood were required to look, for their salaries, to chapter 2, title 26, Revised Statutes of 1901, and amendments thereto, and those county officers who, under the territorial law, were paid fees and not salaries, were to receive such salaries as the board of supervisors had or would fix for them. This difference arises by force of the Constitution. Before statehood, some of the county officers were compensated in fees, and others received salaries. The Constitution abolished the fee system, and provided that all state and county officers should be paid fixed and definite salaries. Section 17, art. 22. By section 4, article 12, boards of supervisors, were empowered to fix salaries of county officers for whom no compensation is provided by law, such salaries to remain in force until changed by general law. *Patty* v. *County of Greenlee,* 14 Ariz. 422, 130 Pac. 757.

After the state was admitted to the Union, county officers who had been paid salaries before statehood under chapter 2, title 26, Revised Statutes of 1901, continued to draw salaries under the provisions of said law of 1901, and those who had been compensated by fees before statehood received the salaries fixed by the boards of supervisors, and this continued until the act of 1912 was given a place among our laws. When the act of 1912 found a place among our laws, county officers were paid the salaries therein provided, except those then in office under salaries fixed by the laws of 1901 and

amendments thereto.   These last, being inhibited from accepting a raise of salary and protected against the lowering of salary during the term for which they were elected, continued to draw the salaries fixed by the territorial statute during the years 1912, 1913 and 1914.   *Hunt* v. *Mohave County, supra; County of Yuma* v. *Sturges,* 15 Ariz. 538, 140 Pac. 504.

The question involved in the Hunt case was as to whether the county assessor of Mohave county, whose term was 1917 and 1918, should be paid the salary fixed by chapter 2, title 26, *supra,* it being the contention of Hunt, the assessor, that the act of 1912 was unconstitutional, and that, therefore, his salary was fixed by the territorial law.   This view was adopted by this court.   It has been decided, therefore, by this court that the incumbents of county offices (of whom Hunt was one) before the act of March 4, 1917, was passed, should receive the salaries fixed by chapter 2, title 26, *supra.*

The Classification and Salary Act of 1917 increased the salaries of county recorder, county treasurer, county attorney, county assessor and superintendent of public schools, over the salaries allowed to these same officers under the law when they entered upon their duties as such officers.   Section 17, article 4, of the Constitution provides:

"The Legislature shall never grant any extra compensation to any public officer, agent, servant, or contractor, after the services shall have been rendered or the contract entered into, nor shall the compensation of any public officer be increased or diminished during his term of office."

If the board of supervisors are permitted to pay the salaries to the named officers fixed by the law of 1917, inasmuch as there was a salary already attached to the office occupied by them, to wit, the salaries fixed by chapter 2, title 26, *supra,* it would result in an increase of their compensation, and be a clear violation of the terms of the constitutional provision just quoted.   If the construction already given this provision of the Constitution by this court is allowed to stand, and I think it is a correct exposition of the law, the action of the board of supervisors, in paying and threatening to continue to pay salaries under the law of 1917 to the named officers, is unauthorized by law.   In the Sturges case, *supra,* 15 Ariz. 540, 140 Pac. 504, this court said:

"It is at once seen that the constitutional restriction is an abridgment of the law-making power to either increase or

diminish that compensation of the officer during his term, and which was prescribed for and as an incident to the office at the beginning of his term; that during his term of office the public officer enjoys exemption from legislative interference and control over the amount of his compensation, and at the same time has a curb put upon his activity in the direction of an increase of compensation, whether such activity be worthy or pernicious. . . . ''

The appellants contend that, since the Salary Act of 1912 was declared unconstitutional, the only lawful expression of the legislature as to salaries of officers is contained in the salary law of 1917 and that, inasmuch as under the Constitution the power of fixing salaries is given to the legislature, until that power is exercised and the salaries permanently fixed, there has been no raising or lowering of salaries within the meaning of the Constitution, and they cite, as sustaining the proposition, the following cases: *Stone* v. *Pryor,* 103 Ky. 645, 45 S. W. 1053, 1136; *Purcell* v. *Parks,* 82 Ill. 346; *State* v. *McDowell,* 19 Neb. 442, 27 N. W. 433; *Rucker* v. *Supervisors,* 7 W. Va. 661.

I have examined the citations, and do not see that they sustain the proposition advanced by appellants. The McDowell case lays down this proposition of law: Where at the time an officer is elected to an office, there is no salary fixed and attached to the office because the constituted authority to fix the salary has failed to act, it is not a violation of the constitutional inhibition against increasing or decreasing salaries during the officer's term if the properly constituted authority, after the beginning of his term, fixes his salary.

The Purcell and Rucker cases announce the same rule, and this court, in *Patty* v. *Greenlee County, supra,* citing *Rucker* v. *Supervisors,* held that the salary fixed by the board of supervisors for the sheriff of said county was only temporary and was superseded by a general law fixing salary passed during the term of the sheriff.

I have carefully read the Kentucky case, and am not particularly impressed with the reasoning. I think the dissenting opinion by Justice WADDELL more correctly states the law than the prevailing opinion.

It is also contended by appellants that county officers of the state are not the same as they were under the territory, even though of the same name and charged with the same

functions and duties, and, that being so, they say, the salary law of 1901 as amended has no application to these offices under statehood. They rely upon section 3, article 12, of the Constitution, which names the county officers subject to change by law, and states that they "are hereby created." The county officers named correspond with those under the territory, except the public prosecutor of the county is called "county attorney" instead of "district attorney," as formerly. However, the functions and duties of these officers under the new arrangement are the same, or practically the same, as under the old. Section 6 of article 22 provides:

"All territorial, district, county, and precinct officers who may be in office at the time of the admission of the state into the Union shall hold their respective offices until their successors shall have qualified. . . . "

In addition to the officers being the same in name and function, this provision of the Constitution, by direct and express language, extended the term of territorial officers over into and made them state officers. Besides, in some cases decided by this court, county officers of the state have been recognized as successors to territorial county officers, and territorial laws have been carried forward and enforced as state laws under the provisions of section 2, article 22, of the Constitution, wherein it is said:

"All laws of the territory . . . now in force, not repugnant to this Constitution, shall remain in force as laws of the state of Arizona until they expire by their own limitations or are altered or repealed by law. . . . "

That is especially true of the fee and salary law as contained in chapter 2, title 26, Revised Statutes of 1901. *County of Yuma* v. *Sturges, supra; Hunt* v. *County of Mohave, supra; Phillips* v. *County of Graham,* 17 Ariz. 208, 149 Pac. 755.

The contention is also made that, inasmuch as the act of 1917 was passed with the emergency clause, it was a legislative construction of the provisions of the Constitution affecting county officers and their salaries, and that this court may, with propriety, adopt that construction as its own. This rule of construction is applied, as I understand it, only when the subject matter is involved in doubt, as when either construction contended for might be adopted without doing violence to the language employed. But if the language used

sets forth clearly the meaning intended, then there is no room for construction either by the court or legislature, and neither may act lawfully out of the bounds and limits as fixed by the Constitution.

The case cited to sustain appellants on this proposition is *State ex rel. Wells* v. *Tingey,* 24 Utah, 225, 67 Pac. 33, wherein it was held, under the peculiar wording of their Constitution, that the salary of the Governor of Utah could be increased from $2,000 to $4,000 during his incumbency without violating the·constitutional inhibitions against increasing salaries. Section 20, article 7, of the Utah Constitution, in addition to the provision inhibiting an increase or decrease of an officer's salary during his incumbency, contains this provision:

"The compensation of the officers provided for by this article, until otherwise provided by law, is fixed as follows: Governor, two thousand dollars per annum," etc.

The court took the view that the expression "until otherwise provided by law" means statutory law, and that the legislature could lawfully change the salary attached by the Constitution to the office of Governor to take effect during that officer's term, and that the salary fixed by the Constitution was only intended to stand until the legislative power to regulate salaries was exercised.

We have no such constitutional provision affecting salaries of county officers. Section 4, article 12, reads:

"The board of supervisors of each county is hereby empowered to fix salaries for all county and precinct officers within such county for whom no compensation is provided by law, and the salaries so fixed shall remain in full force and effect until changed by general law."

We have held that salaries fixed by boards of supervisors under this provision may be changed by general law during the incumbency of the officer. Impliedly, if not directly, it has also been decided that the officers whose salaries are here in controversy are officers "for whom compensation was provided by law," to wit, the laws of 1901 and amendments thereto. See Arizona cases cited *supra.*

There is no similarity between the constitutional provisions construed in the Tingey case and the provisions of our organic law, especially as they affect county officers and their compensation. The reasoning of that case, then, cannot assist

us in arriving at a correct conclusion in the matter before us.

If the Classification and Salary Act of 1917 be held to have taken effect in all respects upon the date of its passage and approval, it would repeal the salary law of 1901 and amendments thereto, and, since it would increase the compensation of the following officers during their term of office, to wit, county recorder, county treasurer, county attorney, county assessor and county superintendent of schools, it would, to that extent, be unconstitutional and void and, besides, leave them without any compensation whatever. I think the better view to take of the act of 1917 is that the legislature intended it to be effective at once in cases where no compensation had been provided by law, such as sheriff, county clerk and deputy county officers and clerks, and that it should be postponed as to those public officers who are already provided compensation by some provision of law. This construction will preserve the law of 1917 in its integrity and at the same time secure to the county officers named compensation under the Laws of 1901 which it evidently was not the intention to repeal until other salaries could be provided by law without impinging the constitutional provision against increasing or diminishing the compensation of a public officer during his term of office.

I have thus far considered the reasons contended for by appellants as to why the named officers should be paid salaries under chapter 61, Laws of 1917, and, to my satisfaction at least, shown that to do so is a plain violation of the constitutional prohibition against increasing or decreasing compensation of a public officer during his term of office.

The opinion of the Chief Justice is an admission that the compensation it allows the named officers is an increase over the salary attached to their offices at the time of their election and induction into office. It concedes that these officers were properly and legally paid their salaries as provided in chapter 2, title 26, Revised Statutes of 1901, and amendments thereto, and says:

"These laws were not repugnant to the Constitution, but they were in harmony with the policy declaring for a system of compensating officers by fixed and definite salaries."

Here, then, is the Constitution itself, according to the majority opinion, providing compensation for such officers by carrying forward the territorial salary law and in direct

terms making it applicable to the same officers under state-hood.   In other words, the Constitution, in effect, said: The county recorder, treasurer, attorney, assessor and superin-tendent of schools, under state organization, shall receive the same salaries they received under territorial organization, and those salaries shall not be increased or decreased during their term of office.  If the Constitution could provide salaries in that manner, and of course it could, it could like-wise forbid any changes therein during the term of office. The constitutional inhibition against increasing or decreasing salaries in general, applying with equal force and propriety to salaries fixed by the Constitution by the adoption of terri-torial salaries, as it does to legislation fixing salaries pur-suant to the Constitution.   Such a construction would not disturb nor contravene the evident policy found in the funda-mental law of doing away with fees and compensating officers by fixed and definite salaries, as the majority would have one think.   It would sustain, rather than contravene, the policy of fixed and definite salaries.

The citation of *Patty* v. *Greenlee County* as authority for the ruling in this case is about as far-fetched as one could imagine.   The question in that case was as to whether the legislature could pass a general law changing the salary of the sheriff of Greenlee county during his term of office, his salary having been fixed by the board of supervisors under section 4, article 12, of the Constitution, wherein the board was empowered to fix the salary of certain officers, among others, sheriffs, which "salaries so fixed shall remain in full force and effect *until changed by general law.*"   This lan-guage plainly implies that the legislature may change the salary fixed by the board of supervisors at any time, and the Patty case, passing upon the contention of the sheriff of Greenlee county that his salary could not be decreased during his term of office, gave effect to the very plain language of the Constitution just quoted and held that a salary fixed by general legislation passed during the term of the sheriff's office took the place of the salary fixed by the board of super-visors.   The provision of the Constitution that empowers the board of supervisors to fix the compensation of certain officers who had theretofore been compensated in fees, also limits the time such salary shall be paid to the enactment of general legislation on that subject.   The very fact that the legisla-

ture is given power to change official compensation in certain instances would seem, according to a well-known rule of construction, to prohibit a change in any case not falling within the exceptions. Other cases in which the legislature is empowered to change the compensation of an officer during his term of office are expressly provided for by the Constitution itself. See section 14, article 6, wherein it is provided that the judges of the supreme court shall appoint a reporter for the decisions of that court and fix his salary "until such salary shall be determined by law." Also section 17, article 6, in which the judges of the supreme court are authorized to appoint a clerk of that court and fix his salary "until such salary shall be determined by law." Also section 18, in which it is provided that the board of supervisors shall fix the salary of the clerk of the superior court "until such salary shall be fixed by law." But nowhere is it provided, either directly or by implication for that matter, that territorial compensation, adopted by the Constitution as the compensation to be paid the same officers after statehood, could be increased or diminished by legislative act or otherwise, during the officers' terms.

The observation quoted from the Patty case by the majority, to the effect that the general scheme of uniformity of salaries provided in the Constitution could not be defeated or postponed by allowing the salaries fixed by the boards of supervisors to be paid officers after the legislature had acted, had no reference whatever to salaries fixed by the Constitution, either by adoption or by direct terms. The framers of the Constitution knew, with 14 different boards of supervisors acting in that many counties, all independent of each other, there could be no uniformity of salary, and it was therefore provided that the compensation fixed by the boards should last only so long as there was a failure of legislative action or until changed by general law.

The majority opinion seems to concede that compensation "definitely fixed or prescribed by law, either by the Constitution of the state, or by some statute made in pursuance thereof," cannot be changed during the term of office, and quotes from the Rucker case to that effect.

My position is—and it seems unassailable—that when the state Constitution adopted the salary act of the territory for the named officers under statehood, the compensation of such

officers was definitely fixed and prescribed by the Constitution of the state. What was held in the Rucker case was that compensation of an officer fixed by the board of supervisors might be changed by legislation during the officer's term, the holding of this court in the Patty case.

The Sturges case, while cited as sustaining the opinion of the Chief Justice, is as directly opposed to his conclusion as it is possible. It announces the universal rule, so far as I know, that the compensation of an officer may not be increased or decreased during his term as against a constitutional prohibition like ours, providing that compensation had been fixed by the Constitution or a law in pursuance thereof. The salary of these officers was fixed by the Constitution when it adopted chapter 2, title 26, being the salary act of the territory. The Sturges case not only fails to support the majority opinion, but in direct terms holds to the contrary. Sturges was inducted into office February 14, 1912, and his term expired December 31, 1914. The controversy was over his compensation for the month of September, 1913. One of the contentions in the case was that Sturges' compensation was fixed by chapter 93, Laws of 1912. Of this contention we said:

"This act is not applicable to the appellee, for the reason that such application is prohibited by section 17, article 4, of the Constitution, which forbids the increase or diminution of the compensation of any public officer during his term of office."

It was decided that appellee, Sturges, should receive his compensation under chapter 2, tit. 26, Laws of 1901. At the time the decision in the Sturges case was written, the constitutionality of chapter 93, Laws of 1912, had not been questioned, and the decision proceeded upon the theory that that act was constitutional, and that to allow the salaries it provided would be in violation of section 17, article 4, *supra.* The exact question we have before us, decided diametrically opposed to the majority opinion, yet cited to sustain it.

My apology for taking so much space to state my views in this case is that a great number of other cases pending in this court are disposed of by this opinion. Besides, of course, it opens the door to those who have accepted the salaries provided for by chapter 2, title 26, of the Laws of 1901, or who have accepted salaries under later provisions

of the law, to make claim for additional sums or the increase provided by chapter 61, Laws of 1917.

Authorities discussing the question of change of salary of deputy or other subordinate, as a violation of constitutional provision against change of salary of public officer during his term, are collated in a note in 37 **L. R. A. (N. S.)** 388.