[Civil No. 1507.   Filed February 3, 1917.]

[162 Pac. 600.]

FRANK L. HUNT, Appellant, v. MOHAVE COUNTY, Appellee.

1. STATUTES—LOCAL AND SPECIAL ACTS—VALIDITY—PAY OF COUNTY OFFICERS.—Under Constitution, article 12, section 4, providing that county supervisors shall fix salaries of county officers for whom no compensation is provided by law, which shall remain in force "until changed by general law," any law changing the compensation of such officers should be a general and not a local or special law.

2. COUNTIES—FUNCTIONS.—Counties are political subdivisions of the state, created to aid in the administration of state law for the purpose of local self-government.

3. STATUTES—"LOCAL AND SPECIAL ACTS."—A law which operates alike upon all of any given class is not local or special.

   [As to what are local or private statutes, see notes in 23 Am. Dec. 543; 1 Am. St. Rep. 903.]

4. STATUTES—"LOCAL AND SPECIAL ACTS"—VALIDITY—PAY OF COUNTY OFFICERS.—The county salary law of 1912 (Civ. Code 1913, pars. 3226–3241), in view of paragraph 3226 thereof, declaring the population of each of the several counties and paragraph 3227, providing that for the purpose of regulating compensation of officers the counties are classified according to population as declared in the preceding section, and naming as many classes as there are counties, each class containing one county only, is a local and special act, and therefore void.

5. STATUTES—LOCAL AND SPECIAL ACTS—VALIDITY—PAY OF COUNTY
   OFFICERS.—Such act is further a local and special act, and void
   because the salary classification is not graduated according to popu-
   lation or other logical scheme, but is unequal.

APPEAL from a judgment of the Superior Court of the
County of Mohave. John A. Ellis, Judge. Reversed and
remanded.

Mr. S. D. Stewart, Mr. W. E. Moroney and Mr. W. E.
Ryan, for Appellant.

Mr. Wiley E. Jones, 'Attorney General, Mr. Leslie C.
Hardy and Mr. Geo. W. Harben, Assistant Attorneys Gen-
eral, and Mr. Charles .W. Herndon, County Attorney, for
Appellee.

ROSS, J.—The plaintiff sued Mohave county for $200,
claiming the same as balance owing him on salary as county
assessor for the months of January, February, March and
April, 1915. He alleges in his complaint that the equalized
assessed valuation of property of all kinds for the year 1914
in defendant county was in excess of $6,000,000, and that by
virtue thereof the salary of assessor of said county for the
term beginning January 1, 1915, is fixed by law in the sum
of $2,400 per annum; that bimonthly he duly presented to
the board of supervisors of defendant county his claim for
salary at the rate of $100, and that he was allowed thereon
by the board of supervisors the sum of $75 only, leaving a
balance for each of the four months still due and owing to
him of $50, or a total sum of $200. Defendant demurred to
the complaint on the ground that it failed to state facts suffi-
cient to constitute a cause of action. The demurrer was sus-
tained, and the plaintiff standing on his complaint, judg-
ment of dismissal was entered. He appeals.

In 1912 the legislature passed an act classifying the coun-
ties of the state and fixing the salaries of the officers of the
different counties. It was under this act that the board of
supervisors was paying plaintiff his salary. It is the con-
tention of plaintiff that the salary act of 1912 is in contra-
vention of the Constitution, and therefore invalid. He

XVIII Ariz.—31

claims his salary is fixed by paragraph 2618, Revised Statutes of 1901, and amendments thereof.

We have had occasion to refer to the act of 1912 in three different cases: *Patty* v. *Greenlee County,* 14 Ariz. 422, 130 Pac. 757, *Boehringer* v. *Yuma County,* 15 Ariz. 546, 140 Pac. 507, and *Adams* v. *Maricopa County,* 16 Ariz. 418, 145 Pac. 884. But in none of these cases was the constitutionality of the salary act of 1912 involved or adverted to. It has heretofore been accepted and treated as valid legislation. It is now contended, however, that it is local and special legislation and violative of section 19, article 4, and section 4, article 12, of the Constitution. Section 19, article 4, provides that:

"No local or special laws shall be enacted in any of the following cases, that is to say."

There are enumerated nineteen subjects upon which the legislature is prohibited from enacting local or special laws, but the subject of classifying counties and salaries of county officers is not mentioned. The section does provide, though, that no local or special laws shall be enacted when a general law can be made applicable. We do not deem it necessary to pass upon the question as to whether, under such a constitutional provision, the judgment and discretion of the legislature is final and not subject to review by the courts when it has enacted a local or special law covering any subject matter not forbidden in direct terms instead of a general law. It might be that courts would feel bound by the judgment of the legislature in such case, but we are confronted with section 4 of article 12, which bears directly upon the subject of counties and county officers and their salaries. In this section it is provided that the supervisors of each county shall fix salaries for all county and precinct officers for whom no compensation is provided by law, and that the salaries so fixed shall remain in force "until changed by general law." The power delegated to the supervisors was, of course, local and special, but it was limited to the exigencies incident to transition from a territory to a state, and until the legislature should meet and enact a general law covering the subject matter of salaries of county officers. This provision, authorizing the supervisors temporarily to fix salaries when no compensation was provided by law, was necessary for the reason that section 17 of article 22 of the Constitution abol-

ished all fees and at the same time provided that all state and county officers, justices of the peace and constables of cities and towns should be paid fixed and definite salaries.

When it is taken into consideration that the provisions of the Constitution are mandatory, unless by express words they are declared to be otherwise (section 32 of article 2), it would seem that any law enacted by the legislature pertaining to the fixing of the salaries of county officers should be a general law as contradistinguished from a local or special law.

The counties are political subdivisions of the state created to aid in the administration of the state's laws and for the purpose of local self-government. In this state they vary in size, natural characteristics, wealth and in population. If there existed uniformity in the different counties in these respects, there would be no occasion or necessity for classifying them for the purpose of fixing the compensation of their officers. Classification by population is a common, although not universal, scheme upon which to base legislation affecting the internal affairs of counties. By reason of these differences in size, population, and wealth of the different counties of the state the labors, burdens and duties of their officers greatly differ, and therefore, in order to fix their compensation, in proportion to their responsibilities and duties, some kind of a classification must be adopted.

A law is not local or special which operates alike upon all of any given class. At the same time if its provisions apply to every county of a class, the class being conceded to be based upon some natural or reasonable principle, it is a general law. McQuillin on Municipal Corporations, section 198, says:

"The controlling rule, as announced many years ago (1875) in a Pennsylvania case, that a 'statute which relates to persons or things as a class is a general law, while a statute which relates to particular persons or things of a class is special,' has been quoted often approvingly. Likewise, the general observation has been made frequently by courts that a legislative act which applies to and embraces all persons who are or may come into like situations and circumstances is a general law. So it has been declared that a law is general 'when its provisions apply to all objects of legislation, distinguished alike by qualities and attributes which necessi-

tate the legislation, or to which the enactment has manifest relation. Such law must embrace all and exclude none whose conditions and wants render such legislation equally necessary or appropriate to them as a class.' ''

Turning to chapter 2, title 15, Civil Code of 1913, paragraphs 3226–3241, being the salary law passed in 1912, we find that the legislature has classified the several counties of the state by population. Paragraph 3226 reads:

''For the purpose of this chapter, the population of the several counties of this state, is hereby declared and determined to be, and is as follows.''

The legislative determination and declaration assigns to each county a definite, certain and inflexible population between given limits differing in number from every other county.

Paragraph 3227 reads: ''For the purpose of regulating and fixing the compensation of all county and precinct officers herein provided for, the several counties of this state are hereby classified, according to their population, as declared and determined in the preceding section of this chapter as follows.''

Here follows as many classes as there are counties in the state, each class being based upon a population corresponding to the population assigned to the counties in paragraph 3226. The county is not named in the classification to which it was intended to belong, but that was not necessary, although it might have been more convenient. To illustrate, it is provided:

First class.—''Counties containing a population of thirty-five thousand and over [Maricopa county] shall belong to, and be known as counties of the first class.'' Second class.— ''Counties containing a population of twenty-five thousand or more, and under thirty-five thousand [Cochise county], shall belong to and be known as counties of the second class. . . . '' Fourteenth class.—''Counties containing a population of less than four thousand [Apache county] shall belong to, and be known as counties of the fourteenth class.''

In paragraph 3226 the legislature has arbitrarily fixed the population of each county without taking into account the inevitable increase of population or the possible decrease of population. There is no chance for a county, by reason of a

change in its population, to change its class. No method is provided in the act by which the population of any county can be determined in the future—it must remain the same in population according to law, if not in fact, until some future legislature may feel moved to declare a different population.

Under this act Apache county could never be anything but a fourteenth class county, nor can any other county advance from the status fixed by the law into another class. Maricopa county will remain the only first-class county, even though she might be doubled or tripled by some other county or counties in population. The status of the intermediate counties is just as fixed.

The most serious objection to this act, it seems to me, is that it fails to provide any way by which a county may pass from one class into another. A county assigned to a class must always, regardless of any change in population, remain of that class. While the act is in form general, in substance it is special and local. Stripped of circumlocution it is in effect 14 special acts, one for each county, and it might just as well have named the county outright and omitted all classification. It takes the present population of the different counties as a basis of its pretended classification, and makes that population the permanent standard of fixing the salaries of county officers. Laws of this kind have been condemned by all the courts so far as I know. Sutherland on Statutory Construction, section 214, states the law as follows:

"A classification based upon existing or past conditions or facts, and which would exclude the persons, places, things, or objects thereafter coming into the same situation or condition is special and void. Thus a classification of cities or counties based upon existing population or upon the population shown by specified census is of this character."

It is impossible for the act to operate except upon the existing populations declared and determined by the act itself. Apache county might change its population to entitle it to the rank of a first-class county and yet for all time, under this statute, legislation fixing the salary of its officers must be based upon the population existing in that county at the time of the passage of the act. That is true of every other county. In *State* v. *Anderson,* 44 Ohio St. 247, 248, 6 N. E.

571, 572, the court was passing upon an act affecting the city of Akron, and it there said:

"The statute is not to apply to any cities that may at any time hereafter have the population named; it applies only to such as had this precise population at the last federal census; . . . instead of classifying the city of Akron, it is taken from the class to which it belongs, under the general statute classifying the cities of the state, . . . and clothed with certain corporate powers not possessed by any city of its class."

The law was declared unconstitutional. In *Devine* v. *Board of Commrs. of Cook County,* 84 Ill. 590, an act of the legislature of the state of Illinois, which by its terms could only apply to the county of Cook, was involved. It was argued that any county that might attain the requisite population within the limited period of six years would fall within the terms of the act and could take advantage thereof. To illustrate the fallacy of this position the court took as an example an assumed act, in all respects like our salary act of 1912. The court said: "Its absurdity would be most manifest if the General Assembly should designate as many classes as there are counties in the state, and then enact a law limited in its operation to each class, under the mere pretense it was, nevertheless, a general law, applicable to a particular class. Such a construction would render valueless the salutary provision of the Constitution forbidding 'local or special laws,'" and I add the salutary provisions of our Constitution, which provide that the salaries of county officers shall be fixed "by general law." In *Board of Chosen Freeholders* v. *Stevenson,* 46 N. J. Law, 173, an act in many respects similar to the salary act of 1912 was under discussion and review, and the court there said:

"The grouping together in a single act of a number of special or local laws does not constitute a general law. This legislation is not general in its operation and effect, and is as clearly within the constitutional prohibition as if eight several acts had been passed, each applyng to one of the counties named in the act of March, 1880. It is in evasion of, and not in conformity with, the requirement of the fundamental law."

For the reason that the classification in the act of 1912 is so framed as to make it impossible for it to operate upon

counties according to their population and because it searches
out and legislates for the counties in effect by name, rather
than by a difference in population, I am firmly convinced
that it is special and local legislation, and not general legis-
lation, and is therefore violative of the Constitution.

Following paragraph 3227 of the act of 1912, which states
the purpose of the classification of counties to be to regulate
and fix the compensation of all county and precinct officers,
are fourteen other paragraphs (3228 to 3241, Civil Code
1913) that provide salaries that county officers shall receive.
There is one paragraph for each of the fourteen counties, and
therefore fourteen different grades of salaries. "The sal-
aries fixed by this law are governed by no general rule, accord-
ing to population or service rendered. It is arbitrary, and
creates the most glaring inequalities." *Board* v. *Stevenson,*
*supra.* For instance, the clerk of the superior court of the
first, third, fourth and sixth class counties is paid $2,400
per annum, and the same officer of the only second class
county is paid $2,700 per annum. The salary of the sheriff
in the first, second, third and fourth class counties is fixed
at $4,000 per annum, and in the fifth, eighth, twelfth and
thirteenth class counties at $3,600 per annum. The sixth
and tenth class counties at $3,300 per annum.

The inequalities, of which the above are illustrations, per-
vade the whole act. Graham county, which is of the seventh
class, pays its county officers very modest and small salaries
compared with the salaries paid by Coconino county, of the
twelfth class. Indeed, to look at the act one must conclude
that it was not the effort to pay the officers according to
population or service rendered. There might be many rea-
sons assigned for these inequalities, but doubtless the con-
trolling one was the generosity or frugality of the members
in the legislature from these different counties. Members
from counties that believed in high salaries secured them, and
members from counties that believed in low or moderate sal-
aries secured them; thus individual legislation resulted rather
than legislation the result of the combined judgment of the
legislative body.

We do not intend to announce the rule that salaries must
be graduated according to class. What we do say, however,
is that all officers of the same class should be treated alike

in amount of salary paid as well as help employed. If, under this rule, the legislature in its judgment should conclude that the responsibilities and duties of officers of a lower grade of county were greater than in a higher grade of county, and fix salaries accordingly, the legislation would not conflict with any provision of our Constitution. As applied to each class, the laws must be general, and in order to be general it must operate on all of the class alike.

Officers like the plaintiff, who are not satisfied with the salary that has been paid them under the act of 1912, but insist upon being paid the salary under the laws of 1901, should bear in mind that the salaries fixed by the latter act were in full of all other compensation, and that if they have been paid expenses and allowed assistance under the act of 1912 in excess of that allowed by the law of 1901, they should likewise account in their settlement with the county for those sums.

The judgment of the lower court is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

FRANKLIN, C. J., concurs.

CUNNINGHAM, J. (Dissenting).—The appellant commenced this action to recover unpaid balances alleged to be due him as a salary as county tax assessor of defendant county for the months of January, February, March and April, 1915. He alleges that his salary as such county officer is fixed by law at the rate of $200 per month, for the reason that the equalized assessed valuation of property of all kinds within the county subject to taxation for the year 1914 was in excess of $6,000,000; consequently the salary of the county tax assessor of Mohave county is fixed by law at $2,400 per year. He alleges that he made demand for payment of each half month's salary for each of said four months; that each demand was allowed in the sum of $75, and rejected in the sum of $25; that by reason of such rejection and disallowance of such sums "there is a balance due and unpaid to plaintiff from defendant, on account of salary for said months, the sum of $200, claims for which said $200, verified as required by law, were duly presented to said board of

supervisors, and by said board disallowed, prior to the filing of this action.''

Plaintiff prays judgment against said defendant ''in the sum of $200, and for costs.'' The defendant interposed a demurrer to the complaint upon the grounds that the facts stated are insufficient to constitute a cause of action. The court sustained this demurrer, rendered judgment for the defendant, and the plaintiff has in form perfected an appeal.

The appellate jurisdiction of this court is limited by section 4, article 6, of the state Constitution, as follows:

''It shall have appellate jurisdiction in all actions and proceedings, but its appellate jurisdiction shall not extend to civil actions at law for the recovery of money or personal property where the original amount in controversy . . . does not exceed the sum of two hundred dollars, unless the action involves the validity of a tax, impost, assessment, toll, municipal fine, or statute.''

Clearly this is an action for the recovery of money in which the original amount in controversy does not exceed $200.

The appellant argues that he is entitled in law to interest on the unpaid amounts of his salary, but alleges that his claim for salary was disallowed, ''prior to the filing of this action.'' The action was commenced by filing the complaint on May 5, 1915. Must we presume that the claim was disallowed at a date prior to the date of filing the complaint? Can the claimant, suing the county to recover portions of amounts rejected, recover interest with his judgment? Paragraph 2439, Civil Code of 1913, gives him the right to sue, and in case he recovers judgment for an amount exceeding the amount allowed, and on presentation of the judgment the board must allow and pay the same, together with the costs adjudged. The board is not authorized to pay any amount in excess of the judgment and costs, and the claimant is permitted to sue for the balance of his claim disallowed. No provision of law exists by which he may recover interest upon the said balance disallowed.

The original amount in controversy is the sum of $200, and that amount is insufficient to confer appellate jurisdiction on this court to review the judgment of the superior court.

The appellant contends that this cause falls within the exception noted, that is, that the action involves the validity

of a statute, and hence this court has appellate jurisdiction. In this respect the appellant says:

"It appears of record that the validity of chapter 93, Session Laws of 1912, is directly involved."

A reference to the complaint discloses that the claim is necessarily based upon section 2, chapter 73, of the Session Laws of 1907, as fixing the amount of the salary of assessors in counties having an equalized assessed valuation of $6,000,-000 or over, at $2,400 per annum. Appellant says that he relies upon paragraph 2618, Revised Statutes of Arizona of 1901, for recovery, evidently intending to refer to paragraph 2618 as amended by section 2 of chapter 73, Session Laws of 1907. This is an assertion to the effect that such statute is in force and effective for the purpose of fixing the assessor's salary. Consequently the legal proposition involved in this assertion is to the effect that section 26, chapter 93, Laws of the First Regular Session of 1912, repealing all acts and parts of acts in conflict with said chapter 93, and paragraph 5553, Civil Code of 1913, is invalid. Appellant admits that the provisions of chapter 2, title 15, classifying the counties and fixing the salaries of the county officers, conflicts with the said statute relied upon. Paragraph 5553, *supra,* is as follows:

"When a statute has been enacted by the legislative power of the state, and has become a law, no other statute, law or rule, is continued in force because it is consistent with the provisions of such statute, passed subsequently thereto, but in all cases provided for by subsequent statute, all statutes, laws and rules, theretofore in force in this state, whether consistent or not with the provisions of such subsequent statutes, unless expressly continued in force by it, shall be repealed and abrogated."

If these provisions are valid enactments, and they are, the statute relied upon by the appellant as fixing his salary is wholly abrogated. No such law as relied upon exists in Arizona. The question raised by the demurrer was, not the validity of a statute, but the actual existence of a law fixing his salary as claimed in the complaint. The trial court in finding that the statute of 1907 did not serve to fix appellant's salary, in effect decided that such alleged statute does not exist. Whether the act of 1912 as it appears as chapter

2, title 15, Civil Code of 1913, is valid, appellant cannot be heard in this case to question for the reason he bases no right thereon; he expressly repudiates that law as conferring any right whatever, admitting that he has been paid his salary as measured by that statute.

The validity of a statute is not involved in this appeal; consequently the court has no jurisdiction to review the final judgment in question.

The appeal must be dismissed.