[Civil No. 2009. Filed December 10, 1921.]

[202 Pac. 391.]

# L. W. COGGINS, Appellant, v. SIMS ELY, L. D. DAMERON, ·and C. W. HORNBERGER, as Trustees of School District No. 1 of Maricopa County, Arizona, A. L. JONES, as County Superintendent of Schools of Maricopa County, Arizona, and VERNON L. WRIGHT, County Treasurer of· Maricopa County, Arizona, Appellees.

1. STATUTES—NOT VOID FOR UNCERTAINTY OR AMBIGUITY UNLESS IMPOSSIBLE TO CLEAR UP DOUBT.—A court will not declare a law void for uncertainty or ambiguity unless, after using every authorized means to ascertain and give the˙ act an intelligible meaning, it is found impossible to clear up the doubt and dissolve the obscurity.

2. STATUTES—CONSTRUED IN ACCORDANCE WITH LEGISLATIVE INTENT.— Where the intent of a statute is not evident or plainly expressed, the court, consistently with established principles of construction, must search for the legislative intent, that it may be declared and enforced.

3. STATUTES—TO DISCOVER INTENT, RESORT MAY BE HAD TO WORDS, CONTEXT, SUBJECT MATTER, ETC.—In arriving at the intention of a statute, resort may be had to the words, context, subject matter, effects and consequences, spirit and reason of the law, and other acts *in pari materia.*

4. STATUTES—UPHELD AND GIVEN OPERATION IF LANGUAGE WILL PERMIT INSTEAD OF BEING TREATED AS MEANINGLESS.—It is the duty of the court to sustain and uphold statutes rather than to ignore or defeat them, and to give them operation, if the language will permit, instead of treating them as meaningless.

5. STATUTES—LEGISLATIVE INTENT MAY BE DETERMINED FROM NECESSARY IMPLICATION.—The legislative intent of a statute may be determined from necessary implication, what is necessarily implied being as much a part of the statute as what is expressed.

6. SCHOOLS AND SCHOOL DISTRICTS—STATUTE ALLOWING INTEREST ON UNPAID SCHOOL WARRANTS HELD TO REQUIRE INTEREST AT SIX PER CENT.—Since the objects of Laws of 1921, chapter 10, allowing interest on school warrants ·indorsed "no funds" at not to exceed eight per cent, were to effect a greater parity of right between creditors of school districts and county creditors generally, who are entitled to interest-bearing warrants ₒon depleted funds, under Civil Code of 1913, paragraph 2568, and to promote the public

welfare by insuring the uninterrupted operation of the educational processes of the state, such chapter, which fixes no specific rate of interest on school warrants, when construed with the latter section, which fixes a rate of six per cent on all warrants not paid for want of funds, requires that all school warrants bear interest at six per cent.

7. SCHOOLS AND SCHOOL DISTRICTS—TRUSTEES MAY FIX RATE OF INTEREST ON UNPAID SCHOOL SALARY WARRANTS.—Since neither the county treasurer, under Civil Code of 1913, paragraph 2568, fixing the rate of interest on warrants indorsed by him, "Not paid for want of funds," at six per cent, nor the county school superintendent, under Civil Code, paragraph 2708, subdivisions 1 and 2, authorizing him to draw warrants only on the order of the board of school trustees of the district, except as provided in paragraphs 2709 and 2711, can fix the rate of interest on school salary warrants indorsed "No funds," the board of school trustees, who are authorized, by paragraph 2733, subdivisions 3 and 8, to manage the school property and employ all school employees and required, by paragraph 2751, to use the school moneys exclusively for the payment of salaries and other expenses therein provided for, are by necessary implication exclusively empowered to fix such rate at more than six per cent, as fixed by paragraph 2568, with reference to unpaid warrants generally, but not exceeding eight per cent, as provided in Laws of 1921, chapter 10, section 1, with reference to school salary warrants; their power over the principal of the debt reasonably implying power to fix the rate of interest, where not definitely fixed by law.

8. SCHOOLS AND SCHOOL DISTRICTS—ACT ALLOWING INTEREST ON UNPAID SCHOOL WARRANTS HELD TO REPEAL ACT PROHIBITING DRAWING OF WARRANTS ON DEPLETED FUNDS.—Since Laws of 1921, chapter 10, limiting the rate of interest on school salary warrants not paid for want of funds to eight per cent, assumes that warrants may be drawn on depleted funds, it is so plainly, irreconcilably, and necessarily repugnant to Civil Code of 1913, paragraph 2708, subdivision 2, prohibiting the drawing of any warrant unless the money is in the proper fund to pay it, as to effect an implied repeal thereof, though it merely assumes the earlier law is no longer operative and does not expressly confer the power to draw warrants under such circumstances.

9. STATUTES — STATUTE ALLOWING INTEREST ON UNPAID SCHOOL WARRANTS HELD NOT UNCONSTITUTIONAL ON GROUND TITLE DID NOT INDICATE INTENT TO REPEAL LAW PROHIBITING DRAWING OF WARRANTS ON DEPLETED FUNDS.—Laws of 1921, chapter 10, entitled "An act providing for the payment of interest upon school warrants whenever there are no funds in the hands of the county treasurer to the credit of the school district," providing that school warrants indorsed, "No funds," shall draw interest at not to ex-

ceed eight per cent, and repealing all acts in conflict therewith, is not repugnant to Constitution, article 4, part 2, section 13, requiring that the subject of every act be expressed in the title, on the ground the latter did not indicate that the statutory inhibition (Civ. Code 1913, par. 2708, subd. 2) against the drawing of warrants against the school fund, when there were no funds in it, was to be repealed, since such title adequately described the law and stated its purpose and scope, and the radical change effected was such as could not fail to impart notice of the provisions of the act.

10. STATUTES — ACT ALLOWING HIGHER INTEREST RATE ON UNPAID SCHOOL SALARY WARRANTS THAN ON OTHER SALARY WARRANTS HELD NOT UNCONSTITUTIONAL AS A SPECIAL OR LOCAL LAW GRANTING A SPECIAL OR EXCLUSIVE PRIVILEGE.—Laws of 1921, chapter 10, allowing interest at not to exceed eight per cent on school salary warrants drawn by the county superintendent on the order of the trustees, and indorsed, "No funds," by the county treasurer, is not repugnant to Constitution, article 4, part 2, section 19, subdivision 13, prohibiting local or special laws granting special or exclusive privileges, on the ground it allows a rate of interest on salary warrants of one class of public servants different from that allowed other classes, under Civil Code of 1913, paragraphs 2567 and 2568, fixing the interest on warrants generally at six per cent, the act applying and operating alike on every county school superintendent, county treasurer, school district, board of trustees, and employee or creditor thereof in the state.

11. CONSTITUTIONAL LAW — STATUTE ALLOWING HIGHER INTEREST ON UNPAID SCHOOL SALARY WARRANTS THAN ON OTHER SALARY WARRANTS HELD NOT CLASS LEGISLATION.—Laws of 1921, chapter 10, providing for the payment of interest at not to exceed eight per cent on school salary warrants not paid for want of funds, is not such class legislation as is denounced by Constitution, article 2, section 13, though the rate of interest on all other such unpaid salary warrants is fixed at six per cent (Civ. Code 1913, par. 2708); such classification being neither arbitrary nor capricious, but based on a natural principle of public policy.

12. CONSTITUTIONAL LAW — LEGISLATIVE JUDGMENT AS TO NECESSITY FOR DISTINCTION BETWEEN CLASSES BINDING ON COURTS UNLESS UNDOUBTEDLY ERRONEOUS.—The legislative judgment as to the necessity for making a distinction between different classes of persons is binding on the courts unless beyond all rational doubt erroneous.

APPEAL from a judgment of the Superior Court of the County of Maricopa. F. H. Lyman, Judge. Affirmed.

Mr. Arthur T. La Prade, for Appellant.

Mr. R. E. L. Shepherd, County Attorney, and Messrs. Kibbey, Bennett, Gust & Smith, for Appellees.

FLANIGAN, J.—The appellant, a taxpayer in school district No. 1 of Maricopa county, brought suit in the superior court of said county to enjoin the appellees, who are respectively the trustees of said school district, the superintendent of schools of said county, and the treasurer thereof, from ordering, drawing, or delivering the warrants of the district to the school teachers thereof, bearing the treasurer's indorsement of "no funds" and calling for the payment of interest thereon at the rate of eight per cent per annum from the date of such indorsement. The court rendered judgment refusing to grant the injunction, and the case is here on appeal from such judgment.

The controversy arises over the effect and meaning of chapter 10 of the Session Laws of Arizona of 1921, which reads as follows:

"Chapter 10.

"(House Bill No. 35)

"An act providing for the payment of interest upon school warrants whenever there are no funds in the hands of the county treasurer to the credit of the school district against which the warrant or warrants are drawn.

"Be it enacted by the Legislature of the State of Arizona:

"Section 1. When any warrant drawn by the county school superintendent of any county is presented to the county treasurer of such county when there are no funds in his hands to the credit of the school district against which the warrant is drawn, the county treasurer shall indorse such warrant 'No funds,' and such warrant shall draw interest from the

date of such indorsement at the rate of not to exceed 8 per cent per annum; provided that 8 per cent interest applies to salary warrants only. The county treasurer shall keep a list of all warrants so indorsed, and shall pay them whenever there is sufficient money to the credit of the proper fund in the order of such indorsement. The interest on such warrants shall stop when the county treasurer shall give notice that he has money to pay the same.

"Sec. 2. All acts and parts of acts in conflict with the provisions of this Act are hereby repealed."

"Approved February 15th, 1921."

At the time of the passage of this act it was provided by paragraph 2708, Revised Statutes, Civil Code of 1913, that "no warrant shall be drawn [by the county school superintendent] unless the money is in the proper fund to pay it," this provision being found in subdivision 2 of that section, of which we quote the first two subdivisions:

"It shall be the duty of the county school superintendent of each county:

"(1) To apportion the school moneys of each district of his county, and to notify the county treasurer, in writing, of the amount apportioned to each district, and to notify, in writing, the trustees of each school district in his county the amount apportioned to their several districts.

"(2) On the order of the board of school trustees of any district, to draw his warrant on the county treasurer for all necessary expenses against the school fund of any such district; the warrants must be drawn in the order in which the vouchers therefor are filed in his office. No warrant shall be drawn unless the money is in the proper fund to pay it, nor shall any warrant for any teacher's salary be drawn unless the voucher shall state the monthly salary of the teacher and the name of the school month for which said salary is due. Upon receipt of such voucher the county superintendent shall draw his warrant upon the county treasurer in favor of the parties, and for the amount stated in such voucher. To keep open to the inspection of the public a register of warrants show-

ing the funds upon which the warrants have been drawn, the number thereof, in whose favor, and for what purpose drawn, and also a receipt from the person to whom the warrant was delivered.''

. The court below held that the legal effect of chapter 10 was to repeal the prohibition referred to, and that by reason of such repeal the superintendent was authorized to draw warrants upon such school fund whether there were moneys in the fund or not. It was held that—

''The repeal of this provision leaves the county school superintendent with the same authority to draw warrants upon the school funds as other proper officers have to draw warrants upon other funds in the hands of the county treasurer whether there is money in such fund or not and that such warrants so drawn by the county school superintendent then stand upon the same basis as warrants drawn by other proper officers of the county, and bear interest at the rate of six per cent per annum from the date of their presentation to the county treasurer for payment and until notice is given by such treasurer that such warrants will be paid upon their presentation to him. And that the further legal effect of said chapter 10, of the Session Laws of the Fifth Legislature of Arizona, is to give to district school trustees the power to direct that such warrants issued by the county school superintendent upon their order for salaries of employees of such districts shall bear interest at the rate of eight per cent per annum from the date of their presentation to the Treasurer for payment and his indorsement thereon of 'No funds.' ''

The provisions with reference to the duties and powers of county treasurers, referred to in the court's holding, are paragraphs 2567 and 2568 of the Revised Statutes, Civil Code of 1913, which read as follows:

''2567. When a warrant is presented for payment, if there is no money in the treasury for that purpose, he must pay the same, and write or stamp on the face

thereof 'paid,' the date of payment, and sign his name thereto.

"2568. When any warrant is presented to the treasurer for payment and the same is not paid for want of funds, the treasurer must indorse thereon, 'Not paid for want of funds,' annexing the date of presentation, and sign his name thereto; and from that time until paid the warrant bears six per cent per annum interest. He must keep a register of warrants presented for payment."

It is contended by appellant that chapter 10 is inoperative and void because section 1 of said chapter merely presumes that there is law authorizing the drawing of warrants by the county school superintendent upon a fund in which there is no money, and as the chapter does not purport to effect any repeal of the prior law in the respect mentioned it cannot have such effect. And it is also contended that the act is void because it does not provide a fixed rate of interest, nor authorize any board, officer, or person expressly or by necessary implication to fix such rate of interest, upon warrants to be issued thereunder. The statute is also assailed for unconstitutionality upon certain grounds, which contentions we hereafter examine.

We consider first the claim that the act is void for uncertainty because it neither fixes a definite rate of interest to be paid upon warrants issued thereunder, nor properly authorizes any board, person, or officer so to do. It is elementary that a court will not declare a law void for uncertainty or ambiguity, unless, after using every authorized means to ascertain and give the act an intelligent meaning, it is found impossible to clear up the doubt and dissolve the obscurity. Courts in the expounding of law cannot assume that the language of a statute is a mere idle or meaningless collection of words, without significance or legal effect, but must, consistent with established principles

of construction, where the intent is not evident or plainly expressed, search for the legislative intent that it may be declared and enforced. For the pur~ pose of arriving at the intention, resort may be had to the words, the context, the subject matter, the effects and consequences, the spirit and reason of the law, and other acts *in pari materia.* Sutherland, Statutory Construction (Lewis' 2d ed.), § 586.

And it is the duty of the court in such cases, and a cardinal rule, to sustain and uphold statutes rather than to ignore or defeat them; to give them operation, if the language will permit, instead of treating them as meaningless; *ut res magis valeat, quam pereat.* Id., § 498; *Young* v. *Regents of University,* 87 Kan. 239, Ann. Cas. 1913D, 701, 124 Pac. 150; *Gilbert* v. *Craddock,* 67 Kan. 346, 72 Pac. 869; *Hogan* v. *Piggott,* 60 W. Va. 541, 56 S. E. 189; *Inhabitants of Orvil Tp.* v. *Mayor etc. of Woodcliff,* 64 N. J. L. 286, 45 Atl. 686.

It is also elementary that we may determine the legislative intent from necessary implication as to what was intended. What is necessarily implied in a statute is as much a part of it as what is expressed. Speaking of this subject of necessary implication, the court, in the case of *Gilbert* v. *Craddock, supra,* says:

"It [the implication] may be drawn from public policy; past acts; the entire terms, purposes, and scope of the act to be considered; the inconvenience, inconsistencies, and the absurdities involved in the contrary consideration; indeed, from all of the things found in the act, the conditions surrounding it, the history antedating it, the purposes to be accomplished by it, and the policy dictating it. . . . On the same subject, it is said in Sutherland on Statutory Construction, section 336; . . . 'A necessary implication means not natural necessity, but so strong a probability of an intention that one contrary to that which is imputed to the party using the language cannot be supposed.'"

The general objects in view in the enactment of chapter 10 are apparent. At the time the act was adopted the employees and creditors of the school districts of the state occupied a disadvantageous position as compared with that of county creditors generally, in that the latter under paragraph 2568 (which we have quoted) were entitled to interest-bearing warrants on depleted funds, while creditors of a school district, in the same event, were denied both warrant and interest. No doubt the greater parity of right to be effected by the act between these classes of creditors was not unnoted or unrecognized, but the legislative intent is found here only as subsidiary to the principal object aimed at, which unquestionably was the promotion of the public good and welfare by insuring the uninterrupted operation of the educational processes of the state, so far as the delivery of interest-bearing warrants to creditors of the various districts would aid therein when payments could not be made in money. The objects to be attained being evident, we shall consider the act in the light of the principles of statutory construction above set forth.

The language of section 1 of the act that "such warrant shall draw interest from the date of such indorsement [by the treasurer] at the rate of not to exceed eight per cent per annum; provided that eight per cent interest applies to salary warrants only," does not fix the specific rate of interest for any particular warrant. This language, when read in connection with the words at the end of the section, "the interest on such warrants shall stop when the county treasurer shall give notice that he has money to pay the same," which quoted words apply to all warrants unpaid for lack of funds, and therefore indorsed, "No funds," makes it perfectly clear that it was not intended by the proviso to deny interest-bearing character to warrants other than salary warrants, and

that all school warrants so issued were intended to bear interest. But as the provisions of chapter 10 do not in themselves sufficiently prescribe the rules to be followed in ascertaining the precise rates of interest to be allowed on the warrants mentioned, it is clear that the legislative purpose will be defeated unless we can educe the rules to be followed by necessary implication from other statutes, or, what is the same thing, ascertain that it was unquestionably intended that some person, officer, or body has the power to determine what the rule is, within the statutory limits governing the case.

It was held by the court below, and is our holding, that chapter 10 effected a repeal of that portion of paragraph 2708 of our Revised Statutes which provides that "no warrant shall be drawn unless the money is in the proper fund to pay it." If the act did no more than this, it would be impossible to avoid the conclusion that by virtue of the express provision of section 2568 a warrant drawn by the superintendent should, upon presentation to the treasurer for payment, when there was no money in the fund to pay it, be governed by said section as to the rate of interest to be paid on the warrant after indorsement, being six per cent. The language of section 2568 is general, and admits of no exception as to any class of warrants. Chapter 10, while permitting the drawing of warrants upon a depleted school fund, does not, as we have noted, purport to definitely fix the rate of interest on warrants unpaid for lack of funds further than to set a limit of the maximum interest to be allowed on salary warrants as "not to exceed eight per cent per annum," with the proviso that eight per cent interest applies to salary warrants only. We think that this latter language does not restrict or qualify the implied repeal we have referred to, and that the legislative intent, so far forth, is easily discerned.

We hold that chapter 10, when construed with section 2568, requires that all warrants unpaid for lack of funds, from the date of their indorsement by the treasurer in conformity with section 2568, shall bear interest at six per cent per annum. There is yet to be determined, however, the effect to be given to the proviso of chapter 10 concerning salary warrants which by the express terms of the act are to bear interest "not exceeding eight per cent per annum."

There are four parties actually concerned in the business of drawing school warrants; (1) The board of school trustees of a school district; (2) the employees or other creditors thereof; (3) the county school superintendent; (4) the county treasurer. Taking these up in inverse order, we find that paragraphs 2567 and 2568 confer no power or duty upon the county treasurer authorizing or requiring him to fix the rate of interest on any warrant indorsed by him. Paragraph 2568 fixes the rate of interest on such warrants without reference to any act of the treasurer himself, except his indorsement—a ministerial act. It is certain therefore that the treasurer has no function to perform in fixing the rate of interest on school warrants, under chapter 10.

The duties of the county school superintendent are set forth generally in title 11 of the Civil Code (*vide passim*), and particularly in chapter 5 of that title. So far as these powers and duties relate to the moneys of the district, and as applicable to this case, the pertinent provisions of law are set forth in the first two subdivisions of paragraph 2708 set forth in said chapter 5. Except in certain special cases provided for in paragraphs 2709 and 2711, the county superintendent of schools is not empowered to authorize the expenditure of the moneys of the district without an order of the board of school trustees, and his function in issuing warrants upon such orders of the

trustees is merely administrative or ministerial.  The county school superintendent, from the nature of his duties and powers, cannot therefore be deemed to possess any authority, express or implied, to fix the rate of interest on any district warrant.

As the legislature must be presumed to have intended that one of the actual parties to the contract should fix the rate of interest (because it would be unreasonable to speak of any effective power exercisable only by consent in the circumstances), we conclude that the board of school trustees are the grantees thereof.  For the powers and duties of the boards of school trustees, as defined by law, are such as by necessary implication render it certain that it was designed by the legislature to empower them to fix the rate of interest on such warrants in the cases mentioned.  By subdivision 8 of paragraph 2733 they are authorized to employ, under written contract, all employees of the schools; by subdivision 3 of the same section they are empowered "to manage and control the school property within their districts."  Paragraph 2751 requires that they "use the school moneys received during the school year from the state and county apportionment exclusively for the payment of salaries of teachers and other employees of the district and contingent expenses for the school year."  This section makes further provision for the use of moneys raised for school purposes and directly imposes upon the boards of trustees of school districts the duties concerning the expenditure of the same.  In addition to that, warrants for the necessary expenses of the district are to be drawn "on the order of the board of school trustees" (with certain exceptions not important to be specially noted), and, as is plain from the statute, by them only.  The power thus possessed by the trustees over the principal of the debt reasonably implies that if the debt is to bear

any specific rate of interest not definitely fixed by law, power over that subject should be exercised by those who have the control over the debt of which the interest is the incident. As the power must reside somewhere, and as by no process of reasoning may we assume that any other officers than the trustees are vested therewith, we conclude that by necessary implication the power is vested, and most appropriately so, in the trustees of school districts.

We hold, therefore, that the boards of school trustees of the various school districts are by law authorized and empowered to fix the rate of interest on school warrants issued to pay salary claims, at a rate of more than six per cent but not exceeding eight per cent per annum, and that conformably to law, where no rate is fixed by them, such warrants, as do all other warrants indorsed as unpaid for lack of funds, bear interest from the time of the treasurer's indorsement at the rate of six per cent per annum.

As stated above, the effect of chapter 10 is to effect a repeal of that portion of subdivision 2 of paragraph 2708 which provides that "no warrant shall be drawn unless the money is in the proper fund to pay it." As the contention is made that no such repeal was effected, we state our reason for the holding.

The language of chapter 10 assumes that warrants may be drawn by the superintendent when there are no funds with which to pay the warrants; in fact, that assumption is the very life of every operative provision of the law, for unless warrants may be so drawn, the legislation in chapter 10 is ineffective for any purpose. Therefore there exists between the former and latter enactments plain, irreconcilable, and necessary repugnancy. The only ground for asserting that these provisions of the former enactment still govern, notwithstanding the enactment of chapter 10, is that the latter contains no express repeal of the

former, but merely assumes that the former law is no longer operative. We know of no reason in principle why a repeal may not as well be effected by this mode as by any other mode of implied repeal. If from chapter 10 we must necessarily conclude that the legislature intended the repeal of the old law, we must give effect to that intention, notwithstanding there is no express language used formally conferring the power to draw a warrant under the circumstances. In all cases where a repeal is implied that result ensues, because two enactments cannot stand together. We think such a result may as well be brought about in the former law by an act which merely ignores its existence and formulates rules inconsistent with it, as by any other precise mode from which we infer that repeal was intended.

Section 13, part 2, article 4, of our Constitution, reads:

"Every act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title; but if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be embraced in the title."

The contention is that the title of chapter 10 does not indicate that the statutory inhibition theretofore existing against the drawing of warrants against the school fund, when there were no funds in it, was to be repealed by the act, nor that an authorization so to do was conferred, and the statute is therefore repugnant to the terms of the Constitution quoted. But the title does very adequately describe the law, and state its purpose and scope. The prior law being that warrants could not be drawn at all upon a depleted school fund, the radical change effected in providing for the payment of interest upon school warrants drawn against such a fund could not

fail to impart notice that the act did make provision, expressly or by necessary implication, for the drawing of such warrants.

"This provision of the Constitution does not require that the title of an act should minutely and in great detail describe the legislation proposed; it is not necessary that the title be a synopsis or a complete index to the legislation. The title of the act, however, should be sufficiently full and comprehensive as to indicate, in a general way, at least, what is to follow in the way of legislation. It should not be so meager as to mislead or tend to avert inquiry into the contents thereof." *Board of Control* v. *Buckstegge*, 18 Ariz. 277, at page 285, 158 Pac. 837, at page 840.

We think the act measures up to the requirements of the constitutional provision quoted in their full intent and meaning.

Finally, it is contended that the statute is invalid as being repugnant to section 19, part 2, of article 4, of our Constitution, which provides that "No local or special laws shall be enacted . . . granting to any corporation, association, or individual, any special or exclusive privileges, immunities, or franchises" (subdivision 13), because it allows "a particular rate of interest on the salary warrants of one class of public servants entirely different and distinct from that allowed other classes of public servants under paragraphs 2567 and 2568, Revised Statutes of Arizona of 1913." This contention cannot be sustained. The act applies to every county school superintendent, county treasurer, school district, board of trustees, and employee or creditor thereof in the state, without exception. It operates alike upon all of these classes and is therefore a general law. See *Hunt* v. *Mohave County*, 18 Ariz. 480–483, 162 Pac. 600, for the enunciation of the rule.

Nor is the act such class legislation as is denounced by section 13, article 2, of our Constitution. The classification made is neither arbitrary nor capricious, but is obviously based upon a natural principle of public policy.

The legislative judgment as to the necessity for making the distinction is binding on the courts, unless, beyond all rational doubt, erroneous. *Matter of Stephan*, 170 Cal. 48, Ann. Cas. 1916E, 617, 148 Pac. 196.

This disposes of all the questions made.

The act being a valid exercise of legislative power and capable of certain enforcement, the judgment of the lower court was right, and is therefore affirmed.

ROSS, C. J., and McALISTER, J., concur.