[Criminal No. 543.   Filed November 21, 1923.]

[220 Pac. 225.]

## S. B. BROWN, Appellant, v. STATE, Respondent.

1. INDICTMENT AND INFORMATION — INFORMATION IN LANGUAGE OF STATUTE SUFFICIENT.—An information charging an offense under Penal Code of 1913, section 547, in the language f that statute is sufficient.

2. BANKS AND BANKING—STATUTORY PHRASE "WHO RECEIVES AND DEPOSITS" HELD TO MEAN "RECEIVES ANY DEPOSITS."—In Penal Code of Arizona of 1913, section 547, providing that an agent of a bank who "receives and deposits" money with knowledge of the bank's insolvency is guilty of a felony, the word "and" before the word "deposits" should be, and the statute means, "any," in view of the fact that the statute (Pen. Code Cal., § 562) from which section 547 was borrowed contains the word "any" and in view of Penal Code of Arizona of 1913, section 4, providing that provisions of the Penal Code as far as they are substantially the same as existing statutes must be construed as continuations thereof and not as new enactments.

3. BANKS AND BANKING—STATUTE PROHIBITING RECEIVING BY INSOLVENT BANK OF DEPOSITS MEANS DEPOSIT OF MONEY OR EVIDENCES OF MONEY—"DEPOSIT."—In Penal Code of 1913, section 547, prohibiting an agent of a bank from receiving any deposits when he knows the bank is insolvent, the word "deposits" implies money placed in the bank by the depositor or evidences or representatives of money such as banks of deposit are authorized to and do receive.

4. CRIMINAL LAW—ERROR IN ADMISSION OF TESTIMONY NOT PREJUDICIAL WHERE SAME TESTIMONY HAD BEEN ADMITTED WITHOUT

---

2. Criminal liability for receiving deposit for bank knowing of its insolvency, see notes in **Ann. Cas.** 1917B, 1081; 31 **L. R. A.** 124.

OBJECTION.—If, in a prosecution under Penal Code of 1913, section 547, for receiving for a bank a deposit with knowledge of bank's insolvency, it was error to permit, over accused's objection, question to bank receiver, "Can you pay the liabilities of that bank?" and error to refuse to strike answer, "I know the assets will not pay the liabilities," such error was not prejudicial, where practically the same testimony was otherwise received without objection.

5. CRIMINAL LAW—ADMITTING CONCLUSION OF BANK RECEIVER AS TO HIS ABILITY TO PAY BANK'S LIABILITIES HELD TECHNICAL ERROR. Where, in a prosecution under Penal Code of 1913, section 547, for receiving for a bank a deposit with knowledge of bank's insolvency, the court permitted prosecution to ask witness bank receiver, "Can you pay the liabilities of that bank?" and refused to strike out witness' answer, "I know the assets will not pay the liabilities," *held* that, if the court's action was error, it was at most technical error, where witness' conclusion was based upon a demonstrable state of facts ascertained by his personal investigation.

6. CRIMINAL LAW—PERMITTING WITNESS TO GIVE OPINION BANK WAS INSOLVENT HELD HARMLESS ERROR.—In a prosecution for receiving for a bank a deposit at the time of the bank's insolvency in violation of Penal Code of 1913, section 547, *held* that, though it was error to allow bank receiver as witness to give his opinion that the bank was insolvent, that question being for the jury under the court's definition of insolvency, such error was harmless in view of the fact that the bank was insolvent, under any known or possible definition of insolvency.

7. BANKS AND BANKING—EXCLUSION OF TESTIMONY IN PROSECUTION FOR RECEIVING DEPOSIT WHILE BANK WAS INSOLVENT HELD PROPER.—In a prosecution for receiving for a bank a deposit during its insolvency in violation of Penal Code of 1913, section 547, it was proper to sustain state's objection to question to witness, receiver of bank, as to how much receiver had paid out for attorney's fees and costs in connection with winding up the affairs of the bank, where there was no suggestion from accused that the expenses were exorbitant, or that if they had been less the bank's resources would have been sufficient to meet its liabilities.

8. BANKS AND BANKING — INSOLVENT BANK ENTITLED TO COLLECT DEBTS WITHOUT VIOLATING STATUTE.—Penal Code of 1913, section 547, prohibiting the receiving by a bank of a deposit during the bank's known insolvency, is directed against receiving "call" deposits and not against the receiving by the insolvent bank of payments upon a depositor's present indebtedness to it.

9. BANKS AND BANKING—RECEIVING DEPOSIT BY AN INSOLVENT BANK AND APPLYING SAME ON DEBT NOT VIOLATION OF STATUTE.—If, at the time R. made a deposit in an insolvent bank, he was indebted to the bank in an amount equal to or in excess of the deposit, and the latter was a general one, nothing being said by R. as to its application, accused, as the president of the bank, had a right to accept and apply it as a credit against R.'s overdue account, and in doing so did not violate Penal Code of 1913, section 547.

10. BANKS AND BANKING—RELATION BETWEEN BANK AND DEPOSITOR STATED.—The relation between a bank and a depositor is that of debtor and creditor, and arises out of contract.

11. BANKS AND BANKING—AGENT OF INSOLVENT BANK COULD WAIVE RIGHT TO APPLY DEPOSIT TO DEBT DUE BANK.—A president of an insolvent bank could agree with a depositor heavily indebted to the bank that the bank's right to appropriate the debtor's deposit upon its account against him would be waived and the depositor permitted to check against the same as an open account, and, hence, the receipt of such deposit would be in violation of Penal Code of 1913, section 547, if the depositor was without knowledge of the bank's insolvency.

APPEAL from a judgment of the Superior Court of the County of Cochise. Alfred C. Lockwood, Judge. Affirmed.

Mr. W. L. Barnum and Mr. L. H. Hays, for Appellant.

Mr. John W. Murphy, Attorney General, Mr. Earl Anderson, Assistant Attorney General, and Mr. John F. Ross, County Attorney, for the State.

ROSS, J.—The appellant was convicted of violating section 547 of the Penal Code of 1913, reading as follows:

"Every officer, agent, teller or clerk of any bank, and every individual banker, or agent, teller, or clerk of any individual banker, who receives and

9. Question as to when a bank is insolvent within statute making it an offense to receive further deposits, see notes in 131 Am. St. Rep. 1022; 20 L. R. A. (N. S.) 444.

See 7 C. J., pp. 580, 584, 641; 17 C. J., pp. 321, 331; 31 C. J., p. 708.

deposits, knowing that such bank, or association, or banker is insolvent, is guilty of a felony.''

The information charged that he as president of the Central Bank of Willcox, a domestic corporation, on or about January 7, 1921, received on deposit from one A. F. Richardson the sum of $140, well knowing at the time that said bank was insolvent. The trial took place in May, 1922, and resulted in a verdict of guilty. From a judgment of conviction defendant has appealed.

We will consider the errors assigned in the order in which they appear in appellant's brief.

It is contended first that the demurrer to the information should have been sustained, for two reasons: (a) For insufficient facts, and (b) because said section 547 is void for uncertainty.

Since the information is in the language of the statute which creates and defines the crime intended to be charged, it is not amenable to the first objection, providing the statute itself is valid. As to this proposition we entertain no doubt. It is clear to our minds that the word ''and'' in the expression ''who receives and deposits'' should be the word ''any.'' Section 547 was borrowed from California (Cal. Pen. Code, § 562) and appears first in the Penal Code of the Revised Statutes of Arizona of 1887 as section 880, and again as section 506 of the Penal Code of 1901. In the California copy, as in the copies of 1887 and 1901 in our codes, the word was ''any'' and not ''and.'' The substitution occurred in the revision of 1913. Its effect, if permitted to stand, is to deprive the section of any meaning whatever. The word ''deposits'' is changed from a noun, meaning money or evidences of money, to a verb, meaning to place on or in some place or receptacle. The section is thus bereft of the definition of what shall be received and deposited by an officer or em-

ployee of a bank in order to commit the crime, and the contention of appellant that the section is void for uncertainty would be sustainable. The court will not adopt that view of the statute, aimed, as it is, at a well known and somewhat prevalent evil, unless compelled to do so. It will not stigmatize the legislature with purposely or negligently abrogating the statute by inserting therein, for words of clear meaning, words of darkness, confusion and doubt. It is evident section 547 should be read as it was originally adopted by us from California. In doing so the legislative intent will be upheld and that should be done when possible. It is not a violation of any canon of construction to substitute one word for another, or to supply or disregard a word in order to give effect to the obvious intention of the legislature, where it is apparent that the wrong word has been used or the right one omitted. Sutherland on Statutory Construction, pp. 796, 797; *Coggins* v. *Ely*, 23 Ariz. 155, 202 Pac. 391; *Clark* v. *Boyce*, 20 Ariz. 544, 185 Pac. 136; *Western Inv. Co.* v. *Murray*, 6 Ariz. 215, 56 Pac. 728; *State* v. *Radford*, 82 Kan. 853, 109 Pac. 284. The conclusion that the legislature intended to change or modify section 547 is negatived by another provision of the Penal Code, found in section 4, reading as follows:

"The provisions of this Code, so far as they are substantially the same as existing statutes, must be construed as continuations thereof, and not as new enactments."

A further claim of uncertainty in section 547 is asserted in that it does not specify what is to be deposited even after substituting the word "any" for "and." The word "deposits," when used in similar contexts, has been defined as follows:

"The word 'deposit,' when used in this connection, has a well-understood popular meaning, and implies

that the depositor has placed in the bank money, or evidences or representatives of money, such as banks of deposit are authorized to and do receive." *Parrish* v. *Commonwealth,* 136 Ky. 77, 123 S. W. 339.

This obviously is the meaning of the word as it is used in the statute.

The receiver of the Central Bank of Willcox took it over on January 26, 1921, and from that time on until the trial in May, 1922, was actively engaged in ascertaining its assets and liabilities. He testified, without objection: "I have worked on collections since January 26, 1921, and I am unable to pay the liabilities." The county attorney, for the evident purpose of making the witness repeat the last words, thereupon asked the question: "Can you pay the liabilities of that bank?" This was objected to as incompetent, irrelevant and immaterial, and calling for a conclusion of the witness. The objection being overruled, the witness answered, "I know the assets will not pay the liabilities"; and a motion to strike the answer was denied. The court's ruling on objection and motion to strike is assigned as error.

It is obvious that, had the objection been sustained or the motion to strike granted, the testimony objected to would still have been before the court and jury, as neither objection nor motion was directed at the witness' statement, "I have worked on collections since January 26, 1921, and I am unable to pay the liabilities." A discussion of this assignment would therefore be useless, as, whatever conclusion we might arrive at, the testimony objected to, or its practical equivalent, would still be a part of the record. We will say, however, this witness testified in detail as to what he had done towards collecting what was due and owing the bank, and as to the ability of those persons and corporations owing the bank to discharge their obligations. He also stated he had been able to collect about $28,000,

while the allowed claims against the bank were in excess of $131,000. His testimony and that of other witnesses showed that the bank was hopelessly insolvent on January 7, 1921; so, while his answer to the question objected to was his conclusion, it was based upon a demonstrable state of facts ascertained by his personal investigation, and was at most only technical error, if that. *Skarda* v. *State,* 118 Ark. 176, Ann. Cas. 1916E, 586, 175 S. W. 1190.

The court permitted the bank examiner, over appellant's objection, to answer the question, "why did you close the bank?" as follows: "I found it was insolvent"—and refused to strike the answer upon motion. This testimony was objected to on the ground that it called for the witness' conclusion, and its admission is now made the basis of an assignment of error.

Besides being one of the questions for the jury to decide, what was asked of witness assumed that he knew what constituted insolvency. The same question was permitted in *State* v. *Stevens,* 16 S. D. 309, 92 N. W. 420, and was disapproved on appeal for the following reason:

"As lawyers do not agree upon the import of the word 'insolvent,' as used by the legislature, and a layman is not presumed to possess the faculty of nice discrimination with reference to such matters, the exact meaning of the witness by the use of the term is not ascertainable. The result of mathematical computation as to assets and liabilities might materially aid the jury in arriving at the ultimate fact of solvency or insolvency, but it was not the province of the witness to finally determine the most essential element of the offense charged in the indictment."

We have no doubt it was error to allow the witness to give his opinion to the effect that the Central Bank of Willcox was insolvent. That was a ques-

tion for the jury to determine under the court's definition of insolvency. But, since the bank was insolvent under any known or possible definition, it would appear to be harmless. We do not overlook that a very reputable court has held that an expert accountant may testify that a depositary bank was insolvent at a given time, when his testimony is based on calculations made upon an examination of its books with a view to determine its assets and liabilities. *State* v. *Cadwell,* 79 Iowa, 432, 44 N. W. 700.

The receiver of the bank on cross-examination was asked "how much he had paid out for attorney's fees and costs in connection with the winding up of the affairs of the Central Bank of Willcox" (quoting from appellant's brief). The state's objection to this was sustained, and this ruling is assigned as error.

The court's ruling was correct. There was no suggestion from appellant that the expenses were exorbitant or out of the ordinary, or that if they had been less the bank's resources would have been sufficient to meet its liabilities.

The appellant, at the close of the state's case, made a motion for an instructed verdict "for the reason . . . the evidence clearly establishes the check received by defendant from A. F. Richardson was received in payment of a past due indebtedness to the bank, and not as a deposit." If the evidence was as this motion asserts, under the law the motion should have been granted. The statutory prohibition contained in section 547, *supra,* is against receiving "call" deposits and not against the insolvent bank receiving payments upon the depositor's present indebtedness to it. In other words, a bank, though insolvent, is entitled to collect from its debtor whatever is due and owing, and the persons in charge

thereof do not violate section 547 by accepting deposits from such a debtor.

If, at the time Richardson made the deposit of $140, he was indebted to the bank in an amount equal to or in excess thereof, and the deposit was a general one—that is, if nothing was said by him to appellant as to its application—the appellant had a right to accept and apply it as a credit against Richardson's overdue account and in doing so would have been within his legal rights. *Ellis* v. *State,* 138 Wis. 513, 131 Am. St. Rep. 1022, 20 L. R. A. (N. S.) 444, 119 N. W. 1110; *Nichols* v. *State,* 46 Neb. 715, 65 N. W. 774; 7 C. J. 655, § 351. And, of course, if the deposit was accepted with the agreement that it should be credited to Richardson's account, the transaction was not only not criminal but highly commendable. It is not disputed that Richardson was greatly in debt to the bank at the time he made the deposit—some $15,000 in all, consisting of several notes past due, a protested draft for $6,000 the bank had cashed for him, and an overdraft of $32.83.

The evidence as to the character of the deposit is as follows: Appellant Brown testified that Richardson came into the bank January 7, 1921, with a $200 check on a local bank, and stated he had collected it as a payment on some cattle; that instead of passing the check into the cashier's window Richardson came to appellant's desk and explained that he had a check out for $40; that he would have to have $60 for his own immediate needs, and that the balance could be applied on his overdraft and past due notes; that the check was accepted agreeably to that understanding. He explains that the reason he did not charge the $100 balance to Richardson's account was that adjustments, charges, or "things of that sort to be made against the account of any depositor usually waited until after the close of busi-

ness, and we then checked those things up'' and that this was not done in Richardson's case, because the bank examiner closed the bank at 3 o'clock on that day and took possession of all books, so that he had no opportunity to make charges or adjustments.

The state questions if this arrangement was made, and places over against its *bona fides* these facts and circumstances: The deposit slip made out by defendant was a general one, and indicated that the money was to be placed to the checking account of Richardson. The slip identified the check deposited as being for $200 and the deposit as being that amount less $60 cash. Richardson's individual ledger account for January 7th showed a deposit of $140 to his credit and a charge of a $40 check, leaving a balance of $100 in the bank subject to check. Genevieve Mulkey, a clerk of the bank, testified she kept the individual deposit ledger and made the entries therein; that on January 7th she got the deposit slips from the teller's cage, and among them the one in question; that she entered it upon the individual ledger, as per her instructions; that if the check had been deposited to be credited to ''loans and discounts'' the slip would have so indicated.

Standing against the appellant's contention that he received this deposit from Richardson to be applied upon the latter's indebtedness to the bank is the fact that he made out a deposit slip giving Richardson a general credit for $100, subject to be checked out at his pleasure. In this state of the evidence the court gave the following instructions:

''The bank may, however, if the parties so desire, agree that the deposit shall not be applied to the indebtedness, but shall be held subject to the check of the depositor, notwithstanding that he may be indebted to the bank. If this agreement be made and the bank be, to the knowledge of the officer making the agreement, insolvent at the time, the crime set

forth in the statute is committed, notwithstanding the depositor is indebted to the bank, or that the bank may later, in the exercise of its right, apply the deposit to the debt. The status of the matter is fixed by the agreement of the parties at the time [of] the deposit is accepted by the bank, and no subsequent change can affect it . . . If, therefore, you believe from the evidence, beyond a reasonable doubt, that a deposit was made for Almas Richardson, as set forth in the information, and that the bank agreed that the same should not be applied to the payment of a past due indebtedness sufficient in amount to exhaust the deposit, but that it all or some part thereof should be held by the bank subject to the check of Richardson, or his order, then that would be a deposit of the character set forth in the statute, notwithstanding that at the same time Richardson owed the bank far more than the amount of the deposit.''

The relation between a bank and a depositor is that of debtor and creditor, and arises out of contract. We know of no reason why the appellant could not have entered into an agreement with Richardson by the terms of which the bank's right to appropriate this $100 deposit upon its account against Richardson could be waived and the latter permitted to check against the same as an open account. The instructions complained of were predicated upon the assumption that such an arrangement could be and might have been made. We think from the manner in which the deposit slip was made out and the entries made in the individual ledger indicating a general credit, and the further circumstance that Richardson had formerly been a cashier of the bank and after leaving it had received unusual and extraordinary accommodations and extensions, presented a state of facts justifying the giving of such instructions, and that the court did not err in refusing to grant the motion for an in-

structed verdict nor in the giving of said instructions.

There are other assignments of error, but as they are covered by the ones we have discussed we will not extend the opinion by considering them.

The purpose of a statute of the kind we are considering is not so much the protection of the individual depositor as to protect depositors generally; its object is not to punish for individual loss or to make the crime dependent upon a loss. The elements of the crime are: (1) Insolvency of the banking institution; (2) the reception of a deposit while it is in such condition; (3) with knowledge of its insolvency. The statute is intended as a shield to those who patronize a bank by making those who hold out to the world its solvency criminally liable for accepting deposits, when in fact it is known by them to be insolvent. It is directed against a species of fraud that has been too frequently practiced upon a trusting and unsuspecting public. No institutions have or should have the confidence of the public more than our banks, and therefore none have the same or an equal opportunity to abuse the public confidence. Since a bank's business, among other things, is to receive deposits, as long as its doors are open for that purpose its whole official and clerical force is proclaiming to the world in strongest possible way:

"This institution is solvent; it has ample resources to meet its obligations; your money will be safe if left with us."

The statute is intended to punish criminally those who knowingly thus falsely represent a banking institution and accept for deposit therein money from the members of society. It therefore makes no difference that Richardson was heavily indebted to the Central Bank of Willcox at the time he made

25 Ariz.—34

the deposit, providing such deposit was received by appellant as a general one, to be checked against by the depositor.

The record disclosing no prejudicial error, the judgment of conviction is affirmed.

McALISTER, C. J., and LYMAN, J., concur.